**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**December 21, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-50743

_____

TONY RAY COLEMAN,

                                        Petitioner-Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

                                        Respondent-Appellee.

_____

Appeal from the United States District Court for
the Western District of Texas

_____

Before REAVLEY, BENAVIDES and PRADO, Circuit Judges.

REAVLEY, Circuit Judge:

     Tony Ray Coleman appeals the district court's denial of his application for

writ of habeas corpus and contends that the state must provide due process before

imposing sex offender registration and therapy as conditions to the release on

mandatory supervision of a prisoner who has never been convicted of a sex crime.

1

We agree that it must.

## I. Background

Coleman was convicted of burglary of a habitation in 1986 and sentenced to thirty years incarceration. He was paroled in 1991. While on parole, the state indicted Coleman for aggravated sexual assault of a child and indecency with a child by contact. He pleaded guilty to and was convicted of only misdemeanor assault. The state revoked his parole following the assault conviction and he was reincarcerated.

On January 17, 2001, Coleman was released on mandatory supervision on the condition that he reside in a halfway house until employed.[1] On February 27, 2001, the parole panel imposed two additional conditions on his release, requiring him to register as a sex offender and attend sex offender therapy. Coleman was not given advance notice or a hearing to contest the imposition of these conditions. He

---

[1] "Mandatory supervision" is "the release of an eligible inmate so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." TEX. GOV'T CODE § 508.001(5) (Vernon 2004). The parole panel must release an inmate on mandatory supervision when his calendar time plus accrued good-conduct time equals the maximum term to which he was sentenced. *Id.* § 508.147(a). Release on parole, on the other hand, is discretionary with the panel. *Id.* §§ 508.001(6); 508.141. Once released, an inmate on mandatory supervision is considered to be on parole. *Id.* § 508.147(b). Because the distinction between mandatory supervision and parole is not highly relevant to the issues at hand, we will use the simpler term "parole" for the remainder of this opinion.

registered, but failed to enroll or participate in therapy. As a result, his parole was revoked on July 9, 2001.

Coleman challenged the revocation in a *pro se* habeas petition, alleging violations of the Due Process and Ex Post Facto Clauses of the federal Constitution. The Texas Court of Criminal Appeals denied the petition without written order on May 29, 2002. Coleman then filed his federal habeas petition under 28 U.S.C. § 2254, also *pro se*. On June 4, 2003, the district court denied the petition. This court granted Coleman a certificate of appealability on his due process claims.[2]

## II. Procedural Default

The state contends that Coleman procedurally defaulted two of his claims by failing to include them in his state habeas petition or properly supplement the petition. Coleman responds that his claims were fairly presented in his state petition and his self-styled "reply" to the state's general denial. We review whether a habeas

---

[2] We reject the state's argument that Coleman should have brought the present suit under 42 U.S.C. § 1983 rather than as a habeas petition. Generally, § 1983 suits are the proper vehicle to attack unconstitutional conditions of confinement. *Cook v. Tex. Dep't of Criminal Justice Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994). A habeas petition, on the other hand, is the proper vehicle to challenge the fact of confinement and seek release from custody. *Id*. Here, Coleman argues that the conditions placed on his parole were unconstitutional, and thus his failure to abide by those conditions should not have resulted in his reconfinement. Because he seeks release, Coleman correctly brought suit under the habeas statute. *Id*.

petitioner's claims have been procedurally defaulted *de novo*.[3]

Procedural default can occur in two ways. First, "[i]f a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal, the prisoner has procedurally defaulted his federal habeas claim."[4] Second, if the prisoner fails to exhaust available state remedies, and the state court to which the prisoner would have to present his claims in order to exhaust them would find the claims procedurally barred, the prisoner has defaulted those claims.[5]

The Texas Court of Criminal Appeals did not "clearly and expressly" base its denial of Coleman's application on a procedural rule, so the first kind of procedural default is not present here.[6] The state argues that Coleman did not exhaust his state remedies, because he never properly presented two of his claims to the state court. A prisoner fairly presents a claim to the state court when she asserts the claim "in

---

[3] *Boyd v. Scott*, 45 F.3d 876, 877 (5th Cir. 1994).

[4] *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997); *see also Harris v. Reed*, 489 U.S. 255, 263 (1989) (holding that "a procedural default does not bar consideration of a federal claim on . . . habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a procedural bar." (internal quotation marks ommitted)).

[5] *Nobles*, 127 F.3d at 420.

[6] The court denied the application on without written order and did not articulate its reasoning.

4

terms so  particular as to call to mind a specific right protected by the Constitution"
or alleges "a pattern of facts that is well within the mainstream of constitutional
litigation."[7]

We conclude that Coleman's reply adequately presented his claims to the state
court.  Coleman made those claims in his reply filed with the state trial court twelve
days before it issued its recommendation and forwarded the habeas record to the
Texas Court of Criminal Appeals.  The Court of Criminal Appeals received his reply
one month before it denied his petition.  The state courts thus had ample time to
consider all of Coleman's claims, and no evidence indicates that they regarded his
reply as untimely.  The state courts' failure to expressly rule on those claims does not
prevent the claim from being exhausted.[8]  Coleman successfully exhausted his state
remedies has not defaulted any claims.

### III.  Procedural Due Process

Coleman argues that the parole panel's imposition of sex offender registration
and therapy as conditions to his parole, without providing him the opportunity to
contest his sex offender status, violated his right to due process.  We review the

---

[7] *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231-33 (2d Cir. 1992)
(internal quotation marks omitted); *see Gartrell v. Lynaugh*, 833 F2d 527, 528-29 (5th
Cir. 1987).

[8] *Ridgway v. Baker*, 720 F.2d 1409, 1412-13 (5th Cir. 1983).

5

district court's denial of habeas relief on this legal issue *de novo*.[9]  Where, as here, the state court has adjudicated the merits of a state petition on a question of law, we must affirm the state's denial of habeas relief unless the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[10]  A state court's decision is "contrary to" federal law if the court "arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or decides a case differently than [the] Court has on a set of materially indistinguishable facts."[11]

The Court's precedent dictates that Coleman's right to procedural due process depends on a two-step inquiry.  We must first determine whether Coleman had a liberty interest in not having sex offender conditions placed on his parole, and, if so, whether the state provided constitutionally sufficient procedures before imposing them.[12]  The state does not dispute that it provided no process in imposing the conditions, and that Coleman, not having been convicted of a sex offense, has never had an opportunity to contest his sex offender status.  Thus, if federal law, clearly

---

[9] *Moody v. Johnson*, 139 F.3d 477, 480 (5th Cir. 1998).

[10] 28 U.S.C. § 2254(d)(1); *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998).

[11] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

[12] *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

established by the Court, requires the conclusion that Coleman had a liberty interest in being free from sex offender conditions, we must grant him relief.

A liberty interest may arise from two sources—the Due Process Clause itself or state law.[13] Liberty interests may be circumscribed, however, when an individual has been convicted of a crime.[14] Convicted criminals' liberty interests are subject to "the nature of the regime to which they have been lawfully committed."[15] Even so, "prisoners do not shed all constitutional rights at the prison gate."[16] Despite the restrictions imposed by incarceration, the Due Process Clause guarantees a prisoner some process before the government can impose conditions that are "'qualitatively different' from the punishment characteristically suffered by a person convicted of [the] crime, and [which have] 'stigmatizing consequences.'"[17]

Restrictions also attend parole, "an established variation on imprisonment of

---

[13] *Sandin v. Conner*, 515 U.S. 472, 477-84 (1995).

[14] *Chapman v. United States*, 500 U.S. 453, 465 (1991); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

[15] *Wolff*, 418 U.S. at 556; *see Morrissey v. Brewer*, 408 U.S. 471, 478 (1972) (stating that parolees must abide by conditions of parole).

[16] *Sandin*, 515 U.S. at 485.

[17] *Sandin*, 515 U.S. at 479 n.4 (quoting *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980)).

convicted criminals."[18]  These conditions of release are necessary to achieve parole's

purpose of reintegrating the individual into society while preventing further antisocial

acts.[19]  However, as in the prison context, a condition may present such a "dramatic

departure from the basic conditions" of a parolee's sentence that the state must

provide some procedural protections prior to its imposition.[20]

Coleman argues that, under the Court's decision in *Vitek v. Jones*, the sex

offender conditions placed on his parole present such a dramatic departure from the

basic conditions of parole that the Due Process Clause of the Fourteenth Amendment

mandates procedural protections.[21]  In *Vitek*, the Court found unconstitutional a state

law that allowed prison officials to identify inmates as mentally ill and transfer them

to mental institutions for involuntary confinement and treatment without a hearing.[22]

Because of the associated stigma, the Court held that involuntary commitment to an

---

[18] *Morrissey*, 408 U.S. at 477.

[19] *Id*. at 478-80.

[20] *See Felce v. Fiedler*, 974 F.2d 1484 (7th Cir. 1992) (holding that state may not condition parole on parolee's involuntary treatment with psychotropic medication absent procedural protections); *cf. Sandin*, 515 U.S. at 485; *Vitek v. Jones*, 445 U.S. 480, 491-92; *Morrissey*, 408 U.S. at 481 ("Whether any procedural protections are due depends on the extent to which an individual will be condemned to suffer grievous loss." (internal quotation marks ommitted)).

[21] *See Vitek*, 445 U.S. 491-94.

[22] *Id.* at 494.

institution went beyond the ordinary loss of freedom suffered by inmates.[23]  The

Court noted that "[a]mong the historic liberties protected by the Due Process Clause

is the right to be free from, and to obtain judicial relief for, unjustified intrusions on

personal security."[24]  Based on the combination of stigma and compelled behavior

modification treatment, the court held that the inmate had been deprived of a

protected liberty interest, and thus the state was required to provide procedural

protections.[25]

Applying *Vitek* in the sex offender arena, the Ninth and Eleventh Circuits have

held that prisoners who have not been convicted of a sex offense have a liberty

interest created by the Due Process Clause in freedom from sex offender

classification and conditions.[26]  We agree.  The facts of the present case are

---

[23] *Id*. at 492.

[24] *Id.* (internal quotation marks omitted).

[25] *Id*. at 494.

[26] *Kirby v. Siegelman*, 195 F.3d 1285, 1292 (11th Cir. 1999) (holding that a state's classification of a prisoner as a sex offender and requirement that he complete sex offender treatment as a precondition to parole eligibility implicated a liberty interest under the Due Process Clause); *Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir. 1997) (holding that a state must provide a hearing before classifying a prisoner as a sex offender and requiring the prisoner to complete a treatment program as a condition to parole eligibility); *cf. Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1243 (10th Cir. 2000) (holding that the state's imposition of sex offender status on an inmate never convicted of a sex offense, combined with a reduction in good time credits if the inmate did not participate in treatment, implicated a state-created liberty interest).

materially indistinguishable from *Vitek*. As in *Vitek*, the state imposed stigmatizing classification and treatment on Coleman without providing him any process.[27] The state's sex offender therapy, involving intrusive and behavior-modifying techniques, is also analogous to the treatment provided for in *Vitek*.[28] Although many parolees

---

On the other hand, the Eighth Circuit has held that the state need not afford a prisoner any process before requiring him to register under the state's predatory offender registration statute. *Gunderson v. Hvass*, 339 F.3d 639 (8th Cir. 2003). *Gunderson* is distinguishable from the present case, however, because the prisoner there complained only of harm to his reputation. *Id.* at 644; *see generally Paul v. Davis*, 424 U.S. 693, 712 (1976) (holding that harm to reputation alone does not implicate a liberty interest protected by the Due Process Clause). In the present case, the panel required Coleman to register *and* attend sex offender therapy. Indeed, in *Gunderson*, the court noted that due process protections may be required where harm to reputation is coupled with "some other tangible element." *Id.*; *see also Vitek*, 445 U.S. at 494 (holding that "the stigmatizing consequences of a transfer to a mental hospital . . . coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that require procedural protections.").

[27] *See Vitek*, 445 U.S. at 492 (describing stigma as a phenomenon creating "adverse social consequences to the individual"); *Neal*, 131 F.3d at 829 ("We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender.").

[28] The Council on Sex Offender Treatment is charged with developing strategies to treat Texas sex offenders. TEX. OCC. CODE § 110.151 (Vernon 2004). The Council provides information regarding treatment strategies at http://www.tdh.state.tx.us/hcqs/plc/csottreatment.htm#information. Such strategies range from counseling and medication to treatment with a penile plethysmograph (a "strain gauge [which is] strapped to an individual's genitals while sexually explicit pictures are displayed in an effort to determine his sexual arousal patterns." *Harrington v. Almy*, 977 F.2d 37, 44 (1st Cir. 1992)).

It is unclear exactly what procedures Coleman would be subjected to during his course of treatment. Coleman asserts that he would be subject to psychiatric medication and treatment with plethysmographs, as discussed on the Council's website. Because the state has not contested this assertion, we accept Coleman's characterization of Texas' sex

are required to participate in some form of counseling or treatment as a condition on their release, we find that, due to its highly invasive nature, Texas's sex offender therapy program is "qualitatively different" from other conditions which may attend an inmate's release.[29] Accordingly, the Due Process Clause, as interpreted in *Vitek*, provides Coleman with a liberty interest in freedom from the stigma and compelled treatment on which his parole was conditioned, and the state was required to provide procedural protections before imposing such conditions.[30] Because the state court

offender therapy.

[29] *See Morrissey*, 408 U.S. at 478 (discussing common parole conditions).

[30] The state argues that, because the Supreme Court has never specifically held that the imposition of sex offender conditions without a hearing on a parolee who was never convicted of a sex offense violates due process, the state's denial of Coleman's habeas petition cannot be contrary to, or an unreasonable application of, the Court's precedent. The state's argument interprets the habeas statute too narrowly. Such a view would preclude habeas relief in any case with facts that did not exactly replicate the facts of a Supreme Court decision. The inquiry, instead, is whether the Court has reached a decision on a set of "materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see Yarborough v. Alvarado*, __ U.S. __, 124 S.Ct. 2140, 2151 (2004) ("Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.").

The state further notes that the Court has held that due process does not require a hearing regarding a convicted sex offender's current dangerousness before the offender can be required to register. *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003). The *Doe* Court, however, far from holding that a liberty interest is not implicated where sex offender conditions are imposed on those *not* convicted of a sex offense, noted that the registration law applied only to those with sex offense convictions. *See id.* at 7 ("[T]he law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest."), and at 9 (Scalia, J., concurring) (noting that "a *convicted* sex offender has no [] right to *additional*

11

held otherwise, its conclusion contravened clearly established federal law, and we therefore reverse the district court's denial of habeas relief.

### III. Substantive Due Process

Coleman also contends that Texas's imposition of sex offender registration and therapy absent a sex offense conviction constitutes arbitrary state action that "shocks the conscience" and thus violates his substantive due process rights.[31] Coleman refers this court to the sex offender treatment outlined in the Council for Sex Offender Treatment's website.[32] As described on the website, "[s]ex offender treatment is different than traditional psychotherapy in that treatment is mandated, confrontational, structured, victim centered, focused on behaviors, and confidentiality is not maintained." Treatment can include "interventions with psychopharmacological agents," polygraph exams to determine sexual history, and use of penile plethysmographs to "modify deviant sexual arousal and enhance

---

'process' enabling him to establish that he is not dangerous") (emphasis added). Because the present case deals with a petitioner who never had the original "procedurally safeguarded opportunity to contest," we do not believe *Doe* provides much guidance.

[31] *See Rochin v. California*, 342 U.S. 165, 172-73 (1952).

[32] COUNCIL ON SEX OFFENDER TREATMENT INFORMATION ON THE TREATMENT OF SEX OFFENDERS, http://www.tdh.state.tx.us/hcqs/plc/csottreatment.htm#information (last updated Oct. 25, 2004); *see supra* note 28.

appropriate sexual arousal."[33]

While these therapeutic measures are certainly intrusive, we do not believe that clearly established federal law, as determine by the Supreme Court, requires the conclusion that Texas's sex offender therapy "shocks the conscience."[34] In *County of Sacramento v. Lewis*, the Supreme Court reiterated its reluctance to expand the concept of substantive due process.[35] While the core of substantive due process is protection from arbitrary government action, "only the most egregious official conduct" is arbitrary in the constitutional sense.[36] The Court noted that behavior most likely to "shock the conscience" and thus support a substantive due process claim is "conduct intended to injure in some way unjustifiable by any government

---

[33] In *Harrington v. Almy*, the First Circuit reversed summary judgment against a state employee alleging a substantive due process violation based on his employer's requirement that he undergo treatment with a plethysmograph to retain his job. 977 F.2d 37. The court stated that "[a] reasonable finder of fact could conclude that requiring the plethysmograph involves a substantive due process violation. The procedure, from all that appears, is hardly routine. One does not have to cultivate particularly delicate sensibilities to believe [that the process is] degrading. . . . The procedure involves bodily manipulation of the most intimate sort." *Id.* at 44.

[34] *Berthiaume v. Caron*, 142 F.3d 12, 17 (1st Cir. 1998) (noting that the plethysmograph is widely used in the scientific community to treat pedophelia and rejecting plaintiff's substantive due process challenge to a professional regulatory board's requirement that plaintiff submit to a plethysmograph where the board had "good reason" to suspect that plaintiff was a pedophile).

[35] 523 U.S. 833, 842 (1998).

[36] *Id.* at 846.

interest."[37]  In the present case, sex offender treatment serves the government interest in protecting members of the community from future sex offenses.[38]  In addition, as invasive as the therapy appears, we doubt that the parole panel imposed the therapy condition with the intent to injure Coleman.

## IV.  Conclusion

The Texas Department of Criminal Justice is authorized by Texas law to impose reasonable conditions on parole to serve the interests of protecting the community and rehabilitating the parolee.[39]  When those conditions impact a liberty interest of the parolee, they may be imposed only with justification.  The Department may condition Coleman's parole on sex offender registration and therapy only if he is determined to constitute a threat to society by reason of his lack of sexual control.  Absent a conviction of a sex offense, the Department must afford him an appropriate hearing and find that he possesses this offensive characteristic before imposing such conditions.  This court was told at oral argument that evidence of Coleman's lack of

---

[37] *Id.* at 849.

[38] *McKune v. Lile*, 536 U.S. 24, 33 (2002) ("Therapists and correctional officers widely agree that clinical rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism.").

[39] TEX. GOV'T CODE § 508.221 (Vernon 2004); TEX. CODE CRIM. PROC. art. 42.12 § 11(a) (Vernon Supp. 2004-2005).

sexual control exists.  None appears in the record, however, and no contention is made that Coleman has been afforded a hearing meeting the requirements of due process.

We therefore hold that the sex offender conditions placed on Coleman's parole are invalid, and we remand the cause to the district court for disposition consistent with this opinion.  The state is not precluded from further efforts to add these same conditions to Coleman's parole upon proper notice and consistent with this opinion.

Reversed and remanded.