

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-75,838

## EX PARTE CRAIG RONALD CAMPBELL, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 23,639-A IN THE 300TH JUDICIAL DISTRICT COURT
### FROM BRAZORIA COUNTY

KELLER, P.J., delivered the opinion of the Court in which WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined. PRICE, J., filed a dissenting opinion in which MEYERS, JOHNSON and HOLCOMB, JJ., joined. COCHRAN, J., filed a concurring opinion in which WOMACK, J., joined.

We filed and set this case to determine whether and under what circumstances a releasee who has never been convicted of a "reportable offense" may be required to comply with sex offender conditions of early release. We hold that the parole panel was authorized by statute to impose sex offender conditions in general, and a child safety zone condition in particular, upon this applicant, and we hold that these conditions were not imposed in violation of due process.

### I. BACKGROUND

In 1992, applicant pleaded guilty to burglary of a building[1] as an habitual offender[2] and was

---

[1] *See* TEX. PEN. CODE §30.02. Applicant was charged with the variants of burglary that require proof of intent to commit theft or the commission or attempted commission of theft. *See id.*,

sentenced to thirty-five years in prison. In addition to prior felony convictions, applicant also had two prior misdemeanor convictions: one for indecent exposure[3] and one for assault.[4] According to a police report in the indecent exposure case, applicant had exposed himself to four young children who were playing on their front lawn. Applicant unzipped his pants, pulled his penis out, said, "[H]ey girl, look," and moved his penis around with his hand. A police report in the assault case indicated that applicant had forced his way into a sixty-year-old woman's home, tried to spread her legs apart, and moved toward her genitals. The report indicated that the district attorney's office had originally advised the arresting officer to file an attempted sexual assault charge.

On July 5, 2006, applicant was released on parole,[5] with special condition "L" – requiring the maximum level of supervision. On July 10, 2006, the parole division of the Texas Department of Criminal Justice notified applicant that it was considering requesting that a parole panel of the Board of Pardons and Parole impose special condition "X" – sex offender conditions. The July 10th notice informed applicant that he had a right to submit information on his own behalf to give reasons why the sex offender conditions should not be imposed. The notice gave a deadline of August 7, 2006. Applicant did not submit a response.

---

§30.02(a)(1), (3).

[2] *See id.*, §12.42(d).

[3] *See id.*, §21.08.

[4] *See id.*, §22.01.

[5] Applicant's habeas application, the trial court's findings, and this Court's "file and set" order all refer to applicant having been released on mandatory supervision. Examination of the official records reveals, however, that applicant was released on parole, not mandatory supervision.

On August 11, 2006, the parole panel held a hearing on the matter. Applicant was not given the opportunity to attend this hearing. The parole panel voted to impose special condition "O" (other), ordering applicant to submit to a sex offender evaluation. On August 24, 2006, applicant submitted to a sex offender interview with Aaron P. Pierce, Ph.D. During the interview, Pierce asked applicant to explain his arrests for the two offenses outlined in the notice. With respect to the assault case, applicant replied that he was drunk and intended to break into a house. When asked whether he attempted to engage in sexual activity with the woman in the house, applicant stated, "I don't think so; I was drunk." With respect to the indecent exposure case, applicant said he was just "taking a leak in an area where there were kids." Based upon those answers and other information obtained in the interview, Pierce recommended that applicant be required to complete "a sexual offense specific treatment program."

On October 6, 2006, the parole panel imposed special condition X. Included within special condition X was a child safety zone condition. On October 11, 2006, applicant received notice of the additional conditions from his parole officer. The parole officer's report indicated that applicant was under home confinement; was permitted to leave his residence only for work, church, medical emergencies, and sex offender treatment; and was prohibited from going within a certain distance, specified by the Board of Pardons and Parole, of premises where children commonly gather.

On November 27, 2006, applicant admitted to a parole officer that he had been going to his father's house every day of the week between 5:30 and 6:30 p.m. and that he was aware that his

father's house was in a child safety zone.[6] Applicant stated that he went to his father's house to eat and shower because his sponsor house did not have hot water. Subsequently, applicant's parole was revoked for failure to follow the instructions of his parole officer and for failure to avoid child safety zones.

In an application for a writ of habeas corpus, applicant contended that, after being paroled out on mandatory supervision, the parole panel "tacked on" sex offender registration and treatment programs in violation of his constitutional rights. He claimed that he "was never convicted of any sex related offenses to initiate said conditions." He further claimed that the "child safety zone" condition should never have been applied to him and that he should be released back to mandatory supervision without sex offender conditions.

After designating issues and receiving an affidavit and various documents, the district court made the following findings of fact:

> (1) [Applicant] has never been convicted or adjudicated guilty of a "reportable" offense as defined by Article 62.001(5), Code of Criminal Procedure;
>
> (2) There was a sexual component to applicant's prior offense of indecent exposure; however, it was applicant's first conviction for indecent exposure; therefore, it is not a reportable conviction under Article 62.001(5), Code of Criminal Procedure;
>
> (3) Applicant did not violate conditions of mandatory supervision that resulted in the revocation of his mandatory supervision, because those conditions relating to sexual offenders did not apply to applicant.

Based on its findings of fact, the district court made the following conclusions of law:

---

[6] The house was within 500 feet of what was either a "Head Start" school (according to the revocation allegations) or a day care center (applicant's testimony). Applicant had previously been moved from that residence to his sponsor residence.

(1) Applicant did not violate conditions of mandatory supervision that resulted in the revocation of his mandatory supervision, because those conditions relating to sexual offenders did not apply to applicant;

(2) Applicant is entitled to mandatory release without sex-offender related conditions.

## II. ANALYSIS

Citing various statutes and relying upon *Coleman v. Dretke*,[7] applicant contends that sex offender conditions may be imposed only upon offenders who have a "reportable offense" under Chapter 62. Alternatively, relying upon *Coleman*, applicant contends that sex offender conditions were imposed upon him in violation of due process because (1) he had not been convicted of a "reportable offense" that would justify imposition of sex offender conditions without a hearing, and (2) he was not given advance notice that he was being considered for sex offender conditions and an opportunity to respond. Because *Coleman* comprises a crucial part of applicant's arguments, we discuss it before turning to applicant's contentions.

### A. *Coleman*

Coleman was released on parole on a burglary conviction.[8] While on parole, he was indicted for aggravated sexual assault of a child and indecency with a child by contact.[9] He pleaded guilty to, and was convicted of, only assault, and his parole on the burglary conviction was revoked.[10] He was later released to mandatory supervision on the burglary offense, on the condition that he reside

---

[7] 395 F.3d 216 (5th Cir. 2004).

[8] *Id.* at 219.

[9] *Id.*

[10] *Id.*

in a halfway house until employed.[11]  Over a month after that, without affording advance notice or a hearing, a parole panel imposed two additional conditions of release: that he register as a sex offender and that he attend sex offender therapy.[12]  Coleman failed to participate in sex offender therapy, and as a result, his mandatory supervision release was revoked.[13]

Coleman argued that imposing sex offender registration and therapy as conditions of his early release, without affording the opportunity to contest his sex offender status, violated due process.[14]  The Fifth Circuit explained that a procedural due process inquiry with respect to sex offender conditions consisted of two elements: (1) whether the complaining party had a liberty interest in not having sex offender conditions imposed on his early release, and (2) if so, whether the State provided constitutionally sufficient procedures before imposing the conditions.[15]  The court further explained that a liberty interest may arise from two sources: the Due Process Clause itself or state law.[16]  The Fifth Circuit concluded that the Due Process Clause itself guarantees a prisoner some process before the State can impose conditions "that are qualitatively different from the punishment characteristically suffered by a person convicted of the crime, and which have stigmatizing

---

[11]  *Id.*

[12]  *Id.*

[13]  *Id.*

[14]  *Id.* at 221.

[15]  *Id.*

[16]  *Id.*

consequences."[17]  The court characterized restrictions that attend early release as "an established variation on imprisonment of convicted criminals" and found that a condition of early release "may present such a dramatic departure from the basic conditions of a parolee's sentence that the state must provide some procedural protections prior to its imposition."[18]

In addressing whether the sex offender conditions imposed on Coleman were a dramatic departure from the norm, the Fifth Circuit discussed the Supreme Court case of *Vitek v. Jones*,[19] which held that due process requires procedural protections before an inmate may be involuntarily committed to a mental institution.[20]  Based upon the combination of stigma and compelled behavior-modification treatment, the Supreme Court held that involuntary commitment to a mental institution implicated a constitutionally protected liberty interest.[21]  The Fifth Circuit found the facts of its case to be materially indistinguishable from *Vitek*: sex offender classification and counseling were stigmatizing, and the sex offender counseling involved intrusive, behavior-modifying techniques.[22]  Consequently, the sex offender conditions imposed upon Coleman were "qualitatively different" from the usual conditions that attend an inmate's release.[23]  The Fifth Circuit also cited cases from

---

[17]  *Id.* (internal quotation marks omitted).

[18]  *Id.* at 222 (internal quotation marks omitted).

[19]  445 U.S. 480 (1980).

[20]  *Coleman*, 395 F.3d at 222.

[21]  *Id.* (citing *Vitek*).

[22]  *Id.* at 223.

[23]  *Id.*

the Ninth and Eleventh Circuits in support of the conclusion that "prisoners who have not been convicted of a sex offense have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions."[24]

Because the sex offender conditions imposed on Coleman implicated a liberty interest, the State could have legitimately imposed those conditions only if it had determined, after affording Coleman appropriate procedural protections, that Coleman constituted "a threat to society by reason of his lack of sexual control."[25] "Absent a conviction of a sex offense," the Fifth Circuit concluded, the State must afford "an appropriate hearing" at which such a determination can be made.[26]

### B. Authorization to Impose the Condition at All

It is undisputed that applicant does not have a "reportable conviction" under the sex offender registration statute, which does not list assault or burglary with intent to commit theft, and lists only a second conviction for indecent exposure.[27] Applicant contends that Government Code sections 508.186, 508.187, and 508.225 specifically address when sex offender conditions in general, and child safety zone conditions in particular, may be imposed. Because none of those statutes apply to the offense of indecent exposure, he reasons that the parole panel lacks the authority to impose those conditions in his case. We disagree.

Sections 508.186 and 508.187 address situations in which a parole panel must impose certain

---

[24] *Id.* at 222, 222 n. 26.

[25] *Id.* at 225.

[26] *Id.*

[27] *See* TEX. CODE CRIM. PROC. art. 62.001(5), and more specifically (5)(F).

conditions, but those sections do not constrain the scope of a parole panel's discretionary authority.[28] Section 508.225 authorizes the imposition of a child safety zone condition for an inmate serving a sentence for an offense falling under section 3g of the Code of Criminal Procedure if such a condition is warranted by the nature of the offense.[29] Section 508.225 does not, however, specifically preclude the use of a child safety zone in other circumstances.[30] In contrast, Chapter 508 does contain one instance in which the legislature specifically precluded something from being used as a condition of release: an inmate may not be required to undergo an orchiectomy.[31]

More importantly, section 508.221 confers broad, general authority on a parole panel to impose conditions of parole or mandatory supervision: "A parole panel may impose as a condition of parole or mandatory supervision any condition that a court may impose on a defendant placed on community supervision under article 42.12, Code of Criminal Procedure . . . ."[32] In turn, article 42.12, section 11, provides, "The judge may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant."[33]

---

[28] *See* TEX. GOV'T CODE §508.186 ("A parole panel shall require as a condition of parole or mandatory supervision that a releasee required to register as a sex offender under Chapter 62, Code of Criminal Procedure" fulfill certain conditions); *id.*, §508.187(b)("A parole panel shall establish a child safety zone" under certain circumstances with certain conditions).

[29] TEX. GOV'T CODE §508.225(a).

[30] *See id.*, §508.225, *passim*.

[31] *Id.*, §508.226.

[32] *Id.*, §508.221.

[33] TEX. CODE CRIM. PROC. art. 42.12, §11(a).

Indecent exposure is a sex offense[34] and a person who commits indecent exposure is specifically identified as a "sex offender" by article 42.12, section 9A,[35] so sex offender conditions would seem "reasonable" under article 42.12, section 11. Moreover, in addition to its general grant of authority, article 42.12, section 11 explicitly permits a judge who grants community supervision to a sex offender identified by section 9A to require the probationer to "submit to treatment, specialized supervision, or rehabilitation according to offense-specific standards of practice adopted by the Council on Sex Offender Treatment."[36] Finally, under article 42.12, section 13B, a child safety zone condition is a requirement of probation for an indecent exposure offense committed against a child.[37] Given the general authority granted to a parole panel to impose any condition of probation permitted by article 42.12, it would be odd to prohibit the imposition of a child safety zone as a condition of parole for a first-time indecent exposure offense when it would be required as a condition of probation under article 42.12.

The dissent contends that §508.225, by authorizing the discretionary imposition of child safety zones for 3g offenders, impliedly prohibits the discretionary imposition of a child safety zone condition for non-3g offenses under the maxim *expressio unius est exclusio alterius* – expressing

---

[34] *See* the text of TEX. PEN. CODE §21.08 ("intent to arouse or gratify the sexual desire of any person") and the title of Penal Code, Chapter 20 ("Sexual Offenses").

[35] TEX. CODE CRIM. PROC. art. 42.12, §9A(a)(2)(B).

[36] *Id.*, §11(i).

[37] *Id.*, §13B(a)(1)(B), (b)(2)("(a) If a judge grants community supervision to a defendant described by Subsection (b) and the judge determines that a child . . . was the victim of the offense, the judge shall establish a child safety zone applicable to the defendant . . . . (b) This section applies to a defendant placed on community supervision for an offense . . . (2) under Section 21.08 . . . Penal Code.").

one thing implies the exclusion of what was not expressed.[38]  For several reasons, we find the dissent's argument to be unpersuasive.

First, the maxim expressed by the dissent is not an inflexible rule but is merely an aid in construction.[39]  Though it "has had widespread legal application," "it is not a rule of law and there is nothing particularly legal about it."[40]  The maxim is "a product of logic and common sense, expressing the learning of common experience that when people say one thing they do not mean something else."[41]  In considering the application of a rule of logic and common sense to parole law, courts should also consider the broad discretion the Legislature obviously intended to confer upon the parole authorities to fashion appropriate conditions of parole.

Second, the maxim operates only when a comprehensive treatment of the subject matter is intended or when addressing an exception to a general rule.[42]  An express grant of authority does not by itself give rise to an inference that matters outside the express grant are prohibited.  In *Dallas*, we held that the express grant of authority to impose conditions of bail on appeal in felony cases did not

---

[38]  *See* dissent at 5.  Although the dissent discusses §508.197 and article 42.12, §13B, it acknowledges that those provisions outline the circumstances under which the child safety zone condition is mandatory, rather than discretionary, and it does not appear to be contending that the mandatory provisions can by themselves give rise to an implied prohibition on a parole panel's discretionary authority.

[39]  *Williams v. State*, 965 S.W.2d 506, 507 (Tex. Crim. App. 1998).

[40] *Id.*

[41]  *Id.*

[42]  *Dallas v. State*, 983 S.W.2d 276, 278 (Tex. Crim. App. 1998)("if statute specifies one exception to a general rule or assumes to specify the effects of a certain provision, other exceptions or effects are excluded").

result in an implied prohibition against imposing conditions of bail on appeal in misdemeanor cases.[43] While the entire statute addressing bail pending appeal could be accurately characterized as comprehensive, the provision from which the court of appeals claimed the implied prohibition flowed – addressing bail in felony cases – was not. We explained that the courts had inherent power to impose conditions of bail in both felony and misdemeanor cases, and we held that the express provision for conditions of bail in felony cases did not disturb the courts' long-held inherent authority with regard to misdemeanors.[44]

Section 508.221 confers general authority on parole panels to impose conditions of parole. Chapter 508 may in its totality constitute a comprehensive scheme with regard to the imposition of conditions of parole. But, according to the dissent, the implied prohibition against the discretionary imposition of child safety zones flows from the explicit grant of discretionary authority found in §508.225. That section does not purport to comprehensively regulate parole conditions and is not framed as an exception to a general rule. Under *Dallas*, then, the express grant of authority to impose child safety zones for one class of offenders under §508.225 does not override a parole panel's general authority to impose a child safety zone condition on other classes of offenders.[45]

---

[43] *Id.* at 278-80; *see also* TEX. CODE CRIM. PROC. art. 44.04(a)(authorizing misdemeanor bail but containing no language specifically authorizing conditions of bail), (c)(providing in felony cases that the court "may impose reaonable conditions on bail pending the finality of [the defendant's] conviction").

[44] *Dallas*, 983 S.W.2d at 279-80.

[45] There is a different aspect of Chapter 508 that does satisfy *Dallas* by prescribing an exception to a general rule: the mandatory provisions. The general rule is that the imposition of conditions by a parole panel is *discretionary*. Two statutes within Chapter 508 outline conditions that are mandatory under certain circumstances, creating exceptions to the general rule of discretion. By specifying the circumstances under which conditions are mandatory, the Legislature has impliedly

Third, an express exclusion in the statutory scheme will negate the existence of implied exclusions. In *Fondren v. State*, the defendant was prosecuted for the (now non-existent) crime of abortion.[46] He was prosecuted as an accomplice under the general accomplice statute that existed at the time, article 79.[47] Article 85 specified that there may be accomplices to all offenses except manslaughter and negligent homicide.[48] A separate statute specific to abortion, article 1072, provided for a theory of accomplice liability with respect to abortion offenses.[49] Despite the abortion-specific provision in article 1072, this Court held that the general parties statute applied to the offense of abortion.[50] Significantly, this Court stated: "If the rule, *expressio unius est exclusio alterius*, applies at all to this statute, it unquestionably is in favor of the construction we give to the several articles, instead of the reverse, for as the statute expressly excepts manslaughter and negligent homicide from the application of article 79, if the Legislature had intended to except abortion it unquestionably would have said so and included that in article 85."[51]

As we have observed, Chapter 508 does contain an express exclusion: orchiectomy is prohibited as a condition of parole or mandatory supervision. This exclusion suggests there are no

---

indicated that no other circumstances involve mandatory conditions. The present case, however, involves when a discretionary condition may be imposed.

[46] 74 Tex. Crim. 552, 169 S.W. 411 (1914).

[47] *Fondren*, 74 Tex. Crim. at 560, 169 S.W. at 415.

[48] *Fondren*, 74 Tex. Crim. at 560, 169 S.W. at 415.

[49] *Fondren*, 74 Tex. Crim. at 560, 169 S.W. at 415.

[50] *Fondren*, 74 Tex. Crim. at 560, 169 S.W. at 415-16.

[51] *Id.*

other exclusions. If the Legislature had intended to prohibit child safety zones except where expressly provided, it could have expressly done so.

Fourth, the parole scheme does contain an express provision authorizing special conditions for sex offenders, including someone in appellant's position, that would logically include a child safety zone: article 42.12, §11(i). As explained above, §508.221 permits the imposition of any condition authorized by article 42.12, and article 42.12, §11(i) permits a judge who grants probation to a §9A sex offender to require that the offender "submit to treatment, specialized supervision, or rehabilitation according to offense-specific standards of practice adopted by the Council on Sex Offender Treatment." In a footnote, the dissent says that it is not at all clear that §11(i) applies to applicant, but the dissent gives no explanation for its conclusion.[52] "Sex offender" is defined by §9A as "a person who has been convicted or has entered a plea of guilty or nolo contendere" for a listed offense, including indecent exposure,[53] of which applicant has been convicted. Because this definition is to be used in conjunction with presentence investigation reports,[54] it seems clear that "has been convicted" includes prior convictions, and not just the conviction in the case in which the defendant is placed on probation.[55]

The dissent further contends that, even if applicant qualified under §11(i), "there is no

---

[52] Dissent at 7 n.14.

[53] TEX CODE CRIM. PROC. art. 42.12, §9A(a)(2)(B).

[54] *Id.*, §9A(b), (c).

[55] Indeed, as the dissent notes, the Legislature has elsewhere, in the context of mandatory conditions, expressly limited a condition-of-probation provision's reach to a person who is actually placed on probation for the sex offense. Dissent at 8 (citing TEX. CODE CRIM. PROC. art. 42.12, §13B(b)).

indication that he was ever evaluated under that section at the trial court level."[56]  But applicant was evaluated pursuant to an order by the parole panel, so the dissent's objection seems be that a *trial court* did not order the evaluation.  Article 42.12 refers to the trial court because it is the probation statute; at that point in the criminal process, the offender is in the trial court.  Even if evaluation is a prerequisite to application of Government Code §508.221, surely the point is not who orders the evaluation, but simply that the offender be evaluated, as he was in this case.

Finally, it is not self-evident to the dissent that imposition of a child safety zone constitutes "treatment, specialized supervision, or rehabilitation."[57]  It is evident to us that it does.  Under "Issues to Be Addressed in Treatment," the Rules and Regulations Relating to Council on Sex Offender Treatment specify "Effective arousal or impulse control shall include methods to control spontaneous deviant fantasies and to minimize contact with objects or persons within the deviant fantasies."[58]

It is worth noting, as well, that article 42.12, §§9A and 11(i) were enacted in 2003,[59] after the enactment of §508.225 (and its article 42.12 counterpart) in 1999.[60]  As the later enactment, §11(i)

---

[56]  Dissent at 7 n.14 (emphasis added).

[57]  Dissent at 7 n.14.

[58]  Council on Sex Offender Treatment, *Rules and Regulations Relating to Council on Sex Offender Treatment*, 22 TEX. ADMIN. CODE §810.68(1), p. 45 (2006).  *See also*, §810.64(d)(20), p. 29 (2006) (regarding possibility of supervised visits with children, client who has history of deviant sexual interest in children should be restricted from having access to children unless certain conditions are present).

[59]  Acts 2003, 78th Leg., ch. 353, §§1, 2.

[60]  Acts 1999, 76th Leg., ch. 56, §§1, 2.

would override any implied prohibition found in §508.225.

Applicant contends that *Coleman* shows that sex offender conditions are not "reasonable" under these statutes. But *Coleman* was a construction of the Due Process Clause of the United States Constitution, not of the Texas statute, and *Coleman*'s holding was about what process must be afforded to the releasee before sex offender conditions may be imposed, not about whether sex offender conditions may be imposed at all. In fact, *Coleman* contemplated that the imposition of sex offender conditions would be legitimate if the releasee had previously been convicted of a sex offense or if particularized justification for the conditions were developed at an "appropriate hearing" afforded to the releasee. The remaining question (and the one that was at issue in *Coleman*) is whether the parole panel deprived applicant of due process by failing to afford notice and an opportunity to respond.

## C. Notice and Opportunity to Respond

Assuming *Coleman* articulates the correct rule of law with respect to the due process right to some manner of hearing, we conclude that this due process right was not violated in applicant's case because he was in fact provided with notice and an opportunity to respond. Even when a liberty interest exists in the early release context, due process does not require a live hearing at which the convicted person may be present.[61] Rather, due process requires simply that the convicted person be given timely notice in advance of the parole panel's consideration of the matter and that he be given an opportunity to submit any information that he feels may be relevant to the parole panel's decision.

---

[61] *Ex parte Geiken*, 28 S.W.3d 553, 560 (Tex. Crim. App. 2000).

Applicant was given notice that he would be considered for sex offender conditions; he did not avail himself of the opportunity to respond. And during the subsequent sex offender evaluation, applicant was allowed to offer explanations with respect to his prior offenses. Applicant complains that he was not given the opportunity to respond to Pierce's sex offender evaluation report. But even in the mandatory supervision context, where we have acknowledged that a liberty interest in early release exists, we have not held that an inmate is entitled to notice of and an opportunity to respond to all the bad evidence the parole panel may have received concerning him.[62]

We deny relief.

Delivered: October 15, 2008
Publish

---

[62] *See id.*, *passim*.