

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-75,838

### EX PARTE CRAIG RONALD CAMPBELL, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 23,639-A IN THE 300TH JUDICIAL DISTRICT COURT
### FROM BRAZORIA COUNTY

COCHRAN, J., filed a concurring opinion in which WOMACK, J., joined.

### O P I N I O N

I join in the denial of relief to this habeas corpus applicant because he was given at least a minimal due-process opportunity to contest the appropriateness of imposing "Special Condition 'X' (Sex Offender Condition)"[1] upon him as a condition of his release on parole.

---

[1] A copy of the Texas Board of Pardons and Paroles sheet outlining "Special Condition 'X'" is included in TDCJ's amicus brief. Those conditions include (1) the mandatory enrollment in a sex offender treatment program; (2) a prohibition against entering any sexually oriented business or any business that provides "adult entertainment"; (3) a prohibition against communicating with the victim of the sexual offense or going near that person's business, home, or school; (4) a prohibition against participating in any volunteer activities without the prior written approval of the parolee's supervising officer; (5) a prohibition against attending any institution of higher learning without prior parole board approval; (6) a prohibition against the purchase, possession, or viewing of any magazines, literature, or visual media that depict sexually explicit images; and (7) the submission to polygraph examinations. For those whose

One might reasonably question the wisdom of the parole board's decision in this matter, but it did not violate the Due Process Clause of the federal constitution.

Seventeen years before his current release on parole in 2006, applicant pled guilty to the Class B misdemeanor of indecent exposure. Twenty-two years before his release on parole, applicant pled guilty to misdemeanor assault. The factual allegations set out in the original police offense reports from these remote misdemeanor convictions are what led the parole board to consider the imposition of Special Condition X. Those allegations have never been tested in a court for their accuracy, and applicant was not convicted of the specific offenses originally filed against him.

The written notice given to applicant by the parole division stated its reasons for considering the imposition of sex-offender conditions:

---

victims were under 17 years of age, the conditions also include (1) a prohibition against any unsupervised contact with any child under 17 in person, by telephone, or by any electronic means unless the parolee is the child's parent; (2) a prohibition against forming any relationship (dating, marriage, or platonic) with any person who has children under 17 without written approval by the parolee's supervising officer; (3) a prohibition against participating or attending any athletic, civic, or cultural program if the participants include children under 17; and (4) a prohibition against going "in, on, or within a distance specified by board policy of a premise where children commonly gather, including a school, day care facility, playground, public or private youth center, public swimming pool, or video arcade facility." Additional conditions that a parole officer may, in his discretion, impose include (1) a prohibition against leaving the approved county without written permission; (2) a prohibition against owning or operating computer equipment without written authorization, but if such authorization is given, submission to a warrantless search of all such equipment "at any time, day or night, by any TDCJ parole or law enforcement official"; (3) a prohibition against owning or operating photographic equipment without written approval; (4) the notification of any prospective employer of the parolee's criminal history; (5) a written curfew requirement; and (6) the submission to searches of the parolee's person, car, home, or any other property at any time, day or night, without a warrant by the parole officer.

Arrest for Attempted Sexual Assault–Plead to Misdemeanor Assault (Allegedly tried to rape an adult white female).[2]  Arrest for Indecency With a Child–Plead to Public Lewdness [sic] (Allegedly exposed penis to persons who were 17 years of age or younger at a public park.  Offender claims to have been urinating).[3]  Awaiting Sex Offender assessment prior to release from TDCJ-ID.

Applicant was told that he could submit a written statement and other documentation within thirty days to explain why the sex-offender conditions should not be imposed.  He did not do so.  The parole board then ordered that applicant submit to a sex-offender evaluation by a psychologist.  He did so, and he explained his version of the events underlying the two previous misdemeanor convictions.   The psychologist assumed that all of the facts within the original police offense reports were true, and therefore concluded that applicant was in

---

[2] The 1984 police offense report stated that applicant entered the apartment of a sixty-year-old woman and that he grabbed her and moved his hand in between her legs.  The report stated that she screamed, and applicant ran away and hid under the bed in her bedroom where the police officer found him.  It would appear that there might have been problems with this case as the charges were reduced to simple misdemeanor assault.  Applicant gave the sex offender psychologist the following explanation of that event: "When I was 18-years-old, I was drunk and I intended to break into a house.  At first, they got me for sexual assault, but dropped it to attempted.  What happened was the lady in the house started screaming when she saw me.  She was an older lady and there was no sex."  When the psychologist asked him whether he had attempted to engage in sexual activity with the woman, applicant said, "I don't think so; I was drunk."  The psychologist concluded that applicant was in need of sexual-offense-specific treatment, in part because he "does not accept responsibility for the attempted sexual assault, and he did not deny that he attempted to rape the adult female (he reported being unable to recall due to alcohol)."

[3] According to the 1989 offense report, three young girls and a young boy saw applicant walk up to them in the front yard and unzip his pants.  The children said that applicant pulled out his penis, moved it around in his hand, and said, "Hey, look, girl."  The responding officer said that applicant was drunk at the time.  Applicant told the sex-offender psychologist, "I was taking a leak in an area where there were kids.  They dropped it to public lewdness."  He denied intentionally exposing himself to the children or anyone else.

denial of his likelihood to commit future sexual offenses.  The psychologist's report stated,

> Based on the fact that he reported being unable to recall whether he did in fact attempt to rape the adult female, and that he denied intentionally exposing his penis to the children, a specific issue polygraph examination is also recommended in order to assist in [applicant's] treatment planning.

The record does not reveal whether applicant was ever given a copy of the psychologist's report.  Applicant was not given a second opportunity to be heard before the parole panel voted to impose Special Condition X, including a child-safety zone, on him.

A month and a half after these sex-offender conditions were imposed, applicant candidly told his parole officer that he had been going to his father's home to take a shower every afternoon because the "sponsor house" where he lived did not have hot water. Unfortunately, applicant's father's house is located within 500 feet of a child-care facility.[4] That was why applicant had to move out of his family's house into a "sponsor house."  Thus, it was undisputed that applicant knew that it was *verboten* to visit his father's home, even to take a hot shower.  Although applicant worked successfully at a full-time job, had avoided drugs and alcohol, and was doing well on supervision, his parole was revoked, and he was returned to prison.

As the Court correctly notes, a conviction for the Class B misdemeanor of indecent exposure is a "sex" offense because (1) it is listed in Chapter 21 of the Penal Code entitled "Sexual Offenses," and (2) it involves an intent "to arouse or gratify the sexual desire" of

---

[4] Applicant's uncle, a retired school superintendent, told the parole officer that applicant went to his father's home between 5:30 and 6:30 each evening.  He said that everyone except the custodian had left the child-care facility by then.

someone. A seventeen-year-old conviction for Indecent Exposure might not appear to be the sort of dangerous sex crime that the Texas Legislature had in mind when it enacted the stringent sex-offender registration and treatment statutes, but it does fit within a literal application of the law.

Nonetheless, the Parole Division wisely erred on the side of discretion and did not automatically impose Special Condition X on applicant.[5]  Instead, it provided him with advance notice of its reasons for considering imposition of the sex-offender special conditions and an opportunity to provide written documentation as to why those conditions should not be imposed.  It also gave him an opportunity to explain, during a personal interview, to the parole board's forensic psychologist why those conditions should not be imposed.  Applicant did not have any further recourse or forum in which to dispute the psychologist's report (if he was even given a copy of that report), but at least he had had some small, informal opportunity to present his side of the story.[6]

Once Special Condition X was imposed, it is not surprising that applicant would fail to abide by every one of its intrusive conditions and prohibitions.  Taking hot showers at his father's home, which happened to be located near a child-care facility, is not the sort of

---

[5] Because applicant had been previously convicted of "a" sex crime, although not a "reportable" sex offense, it is uncertain whether the procedural due-process protections mandated by the Fifth Circuit in *Coleman v. Dretke*, 395 F.3d 216 (5th Cir. 2004), are required in this instance.

[6] In *Coleman*, the Fifth Circuit did not elaborate on precisely what type of notice and hearing would suffice to support the parole board's finding that a parolee would "constitute a threat to society by reason of his lack of sexual control."  395 F.3d at 225.

violation that would necessarily call for returning a parolee to a high-cost prison.[7] However, the parole board's action was authorized by law.   I therefore agree that applicant has not proven that he is entitled to relief on his claim.

Filed: October 15, 2008

Publish

---

[7] In Texas, the average cost per day to imprison an inmate in 2006 was $42.54; the average cost per day to maintain a parolee was $3.51, with an additional cost of $323.69 per year for treatment in the Special Needs Sex Offender Program. LEGISLATIVE BUDGET BOARD, CRIMINAL JUSTICE UNIFORM COST REPORT FISCAL YEARS 2004-2006 3, 6, 10 (2007).