**David Brian JENNINGS, Plaintiff,**

v.

**Rissie OWENS, et al., Defendants.**

**No. A–06–CA–990 RP.**

United States District Court,
W.D. Texas,
Austin Division.

Dec. 12, 2008.

David P. O'Neil, William T. Habern, Habern, O'Neil & Buckley, LLP, Huntsville, TX, Richard Gladden, Jackson & Hagen, Denton, TX, Scott Pawgan, Habern, O'Neil & Buckley, LLP, Conroe, TX, for Plaintiff.

Carol M.V. Garcia, Texas Attorney General's Office, Kim Coogan, Attorney General's Office, Austin, TX, for Defendants.

## ORDER

ROBERT PITMAN, United States Magistrate Judge.

Before the Court are Plaintiff's Motion for Summary Judgment, filed October 2, 2008 (Clerk's Dkt. # 105); Defendants' Response to Plaintiff's Motion for Summary Judgment, filed October 31, 2008 (Clerk's Dkt. # 108); Plaintiff's Reply to Defendants' Response on Motion for Summary Judgment, filed November 13, 2008 (Clerk's Dkt. # 110) and Defendants' Reply to Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Summary Judgment, filed November 18, 2008 (Clerk's Dkt. # 111). Having reviewed the filings by each party, as well as the relevant case law and the entire case file, the motion is now ripe for determination.

## I. BACKGROUND

In 1988, David Brian Jennings ("Plaintiff") was convicted of debit card abuse for stealing $800.00 from his roommate. His sentence for this crime, enhanced by two prior convictions, was twenty-five years confinement. While on parole in 2005, seventeen years after the crime, a two person parole panel, without notice to Plaintiff, amended the conditions of his parole. Under the new conditions, he was required to

attend sex offender treatment, prohibited from entering into any relationship with a person who has a minor child and prohibited from using a computer.

Plaintiff filed this suit, pursuant to 42 U.S.C. §§ 1983 and 1988, alleging that he was deprived of his constitutional right to due process when the Texas Board of Pardons and Paroles ("TBPP") imposed these conditions on his parole without providing him sufficient process. He brought this action against five Defendants, each in their official capacity: (1) Defendant Rissie Owens ("Owens"), Presiding Officer of TBPP; (2) Brian Collier ("Collier"), Deputy Executive Director, Texas Department of Criminal Justice—Parole Division ("TDCJ–PD"); (3) Jay Patzke ("Patzke"), Deputy Director, TDCJ–PD; (4) Linda McCarver ("McCarver"), Parole Supervisor within Plaintiff's Region of the TDCJ–PD; and (5) his parole officer.[1]

The parties consented to this Court's jurisdiction and the case was reassigned to this Court on February 20, 2008.[2]

## II. CURRENT MOTION

Plaintiff brings the current motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[3] Plaintiff also requests a declaratory judgment, pursuant to 28 U.S.C. § 2201, and a permanent injunction, pursuant to 28 U.S.C. 1343.[4]

## III. SUMMARY JUDGMENT EVIDENCE

### A. Plaintiff's Conviction History

Given the nature of the case, a review of Plaintiff's conviction history is appropriate.

On August 28, 1979, Plaintiff signed a stipulation of facts stating that, on December 19, 1978, he kidnapped a child with the intent to facilitate indecency with the child.[5] At the time of the kidnapping, Plaintiff was fifteen years old [6] and the child was eight years old.[7] Plaintiff pled guilty to Aggravated Kidnapping and sentenced to confinement of not less than five, but not more than eight years beginning on December 21, 1979.[8]

On June 27, 1986, Plaintiff pled guilty to "Forgery by Passing." He had forged a check for $250.00.[9] Plaintiff was sentenced to three years confinement in the Texas Department of Corrections.[10]

On April 5, 1989, Plaintiff pled guilty to Debit Card Abuse (Habitual).[11] According

---

1. Plaintiff's parole officer at the time he brought suit was Sean Fant ("Fant"). His current parole officer is Teresa Perez ("Perez"). Pursuant to Fed. R. Civ. P. 25(d)(1), the Court hereby automatically substitutes Perez in the suit for Plaintiff's previous parole officer.

2. (Order, Clerk's Dkt. # 47.)

3. (Plaintiff's Motion for Summary Judgment, Clerk's Dkt. # 105 ("Pl. Mtn. for SJ")).

4. (*Id.* at 15.)

5. (Exhibits to Defendants' Motion for Summary Judgment, Clerk's Dkt. # 51, at 4.) Both Plaintiff and Defendants refer to the extensive exhibits attached to Defendants' Motion for Summary Judgment. The exhibits are sequentially numbered, therefore, the Court will cite to the exhibits as "Ex. D. MSJ at X".

6. (Plaintiff's Original Complaint, Clerk's Dkt. # 1, at 4 ("Compl.")). Defendants do not dispute this fact.

7. (Exhibits to Defendants' Response to Plaintiff's Motion for Summary Judgment with Brief in Support, Clerk's Dkt. # 108 at 3.) Defendants' exhibits are sequentially numbered, therefore, the Court will cite to them as "Ex. D. Resp. at X."

8. (Ex. D. MSJ at 6.)

9. (Ex. D. MSJ at 15, 17.)

10. (Ex. D. MSJ at 17–18.)

11. (Ex. D. MSJ at 21–22.)

to Plaintiff, he had used his roommate's debit card without his permission and withdrawn $800.00.[12] As a result, he was sentenced to serve twenty-five years with the Texas Department of Corrections.[13] His sentence was enhanced by his 1979 kidnapping conviction and his 1986 forgery by passing conviction.[14]

Plaintiff was released on parole on his 1989 conviction most recently on May 23, 2005. He was released into the supervision of his parole officer at the time, Fant.[15]

## B. Imposition of Special Condition X on Plaintiff's Parole

On June 14, 2005, an unidentified official requested that special condition X be imposed on Plaintiff's parole.[16] The parole board panel denied the request.[17] In August 2005, Fant requested the imposition of special condition X on Plaintiff's parole.[18] The parole board panel approved the request on August 4, 2005.[19] Under "Reason for Request," the form read:

A request was previously submitted for special condition "X" on 6–14–05 and denied by the Board Panel. After re-

view of the previous request, I do not believe that the officer provided adequate information. This offender was convicted of Aggravated Kidnapping with intent to commit Indecency with a Child and intentionally inflict bodily injury and to violate and abuse the victim sexually. The offense involved the offender abducting an eight year old stranger male by luring the child under the premise of helping him find something that was lost. The offender took the victim to a hotel room where he forced the child to perform oral sodomy. The offender plead guilty to the offense. Request approved by Sex Offender Operations Specialist, Janet Latham.[20]

Special condition X actually includes a number of conditions, however, Plaintiff complains of only three of the conditions.[21] They are:

Enroll in and participate in a treatment program for sex offenders as directed by the supervising parole officer. Offenders serving a sentence for an offense as defined in 508.187(a), against a victim who is under 17, shall receive psychological counseling until such time as the

12. (Ex. D. Resp. at 33.)

13. (Ex. D. MSJ at 21–22.)

14. (Ex. D. MSJ at 21, 33.)

15. It appears that Plaintiff also plead guilty to a charge of false imprisonment and was convicted on October 10, 1984, in Freestone County, Texas. (Ex. D. Resp. at 11.) Plaintiff was sentenced to six months of confinement. (*Id.*) The plea and conviction arose from an affidavit stating that, on April 8, 1984, Plaintiff asked a child to get into his car and mow his grandmother's yard in a nearby town. (*Id.* at 13.) The child went with Plaintiff but, when they stopped at a gas station, the child refused to get back in the car and asked for help from a gas station attendant. The child was thirteen years old. (*Id.*)

This conviction is newly disclosed. It was not referred to as a prior conviction on the form indicating his sentence for his 1989 con-

viction. (*See* Ex. D. MSJ at 25.) Defendants' did not mention it in their motion for summary judgment. Most importantly, it does not appear that the parole board panel relied on it in any way when imposing special condition X on Plaintiff's parole. For this reason, it has no effect on the Court's analysis.

16. (Ex. D. MSJ at 37.)

17. (*Id.*)

18. (*Id.*)

19. (*Id.*)

20. (*Id.*)

21. Plaintiff originally complained of the imposition of two additional conditions but has since abandoned his complaint about those conditions. (*See* Pl. Mtn. for SJ at 5, n. 13.)

treatment provider, in conjunction with the Parole Division, determines that it is no longer required. The Parole Division will submit a recommendation to withdraw the requirement to attend psychological counseling to the appropriate Board panel in those instances where such action is deemed appropriate.[22]

I shall not become involved in a dating, marriage or platonic relationship with any person who has children 17 years of age or younger unless approved in writing by my supervising Parole Officer.[23]

I shall not own, maintain or operate computer equipment without a declared purpose and the written authorization of my supervising Parole Officer. If authorization is granted, I shall submit to a search of the computer hardware, software, files, and peripherals by any TDCJ parole or law enforcement official. I shall allow the supervising officer to install a specified computer program designed to track computer activity.[24]

On August 12, 2005, Fant presented Plaintiff with two forms requesting that Plaintiff acknowledge the imposition of special condition X.[25] Plaintiff claims, and Defendants do not refute, that this was the first time Plaintiff became aware of Defendants' imposition of special condition X on his parole.[26] Plaintiff refused to sign or initial either form.[27] On February 6, 2006, Plaintiff was provided a Notice of Special Conditions, including the complained of

conditions, and this time, Plaintiff signed the form.[28]

## C. History and Development of Special Condition X

Plaintiff challenges the procedure used to impose conditions on his parole. Therefore, a review of the creation of special condition X and the development of procedures used for imposing special condition X are necessary.

The Texas Constitution establishes the TBPP and gives the Texas Legislature the authority to enact parole laws.[29] The Texas Legislature authorizes the TBPP, through a parole panel, to impose conditions on parole "that a court may impose on a defendant placed on community supervision under Article 42.12, Code of Criminal Procedure."[30] This article of the Texas Code of Criminal Procedure permits a judge to "impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform" an offender.[31] Further, a judge who grants community supervision to a sex offender, may require the sex offender to "submit to treatment, specialized supervision, or rehabilitation according to offense-specific standards of practice adopted by the Council on Sex Offender Treatment."[32]

Relying on this statutory authority, Defendant Collier first promulgated a Parole Division Policy and Operation Procedure (PD/POP) that included special condition X in July 2003.[33] Adopted as PD/POP

---

22. (Ex. D. MSJ at 38.)

23. (Ex. D. MSJ at 40.)

24. (*Id.*)

25. (Ex. D. MSJ at 39–43.)

26. (Pl. Mtn. for SJ at 2.)

27. (Ex. D. MSJ at 39–43.)

28. (Ex. D. MSJ at 44–46.)

29. TEX. CONST. art. IV, § 11.

30. TEX. GOV'T CODE ANN. § 508.221 (Vernon Supp.2008). (Citations are to current year because the Court is discussing TBPP's current authority to impose conditions.)

31. TEX.CRIM. PROC.CODE ANN. art. 42.12 § 11(a) (Vernon Supp.2008) (same).

32. *Id.* at art. 42.12 § 11(i).

33. (Ex. D. MSJ at 64–79.) Departmental policies were monitored by Defendant Patzke, as Regional Director of the TDCJ–PD Region where Plaintiff was on parole. Defendant

3.6.2, this policy "establishe[d] the procedures for sex offender special conditions, supervision guidelines, and sex offender treatment." [34] The policy outlined what conditions constitute special condition X, including the three conditions complained of by Plaintiff.[35]

If special condition X had not been imposed on an offender at the time of their release on parole, the policy requires that the supervising officer request its imposition.[36] The policy requires the officer to request special condition X even though the policy acknowledges that each sex offender needs individualized treatment and supervision.[37] The request must be reviewed and approved by a Sex Offender Program Specialist.[38] The supervising officer attaches various supporting documentation to the request when submitting it to the TBPP.[39] The TBPP then has the discretion to grant or deny the request for imposition of special condition X. If the request is approved, then the offender is required to sign a notice acknowledging the imposition of special condition X.[40] It is not until the condition is imposed that the offender receives notice of special condition X.[41]

The TBPP, chaired by Defendant Owens, adopted special condition X as TBPP policy in January 2004.[42] The policy adopted by the TBPP does not provide any additional procedure to notify the offender prior to the imposition of special condition X or allow the offender any opportunity to dispute the imposition of the condition.[43] A former TBPP official testified that no process was required, and no process was provided, when imposing special condition X on offenders who have been convicted of sex offense.[44]

In July 2006, the TBPP adopted a revised policy regarding the procedure for imposing special condition X.[45] Under the revised policy, if the offender has no current or prior conviction for a sex offense, then additional process is necessary before imposing special condition X.[46] This addition of process occurred after the Fifth Circuit released its opinion in *Coleman v. Dretke*, ("*Coleman I*").[47]

*Coleman I* involved an offender who had not been convicted of a sex offense who had special condition X imposed.[48] Therefore, the TBPP refers to offenders who do not have a sex offense in their conviction

---

McCarver served as the parole supervisor in Plaintiff's parole region. As a parole supervisor, McCarver coordinated parole activities and directed parole officers.

**34.** (Ex. D. MSJ at 65.)

**35.** (Ex. D. MSJ at 66–68. In particular, note 1(a)(1) (sex offender treatment), 1(c)(2) (restriction on relationships), 1(c)(5) (restriction on computer ownership and use)).

**36.** (Ex. D. MSJ at 68, B.)

**37.** (Ex. D. MSJ at 65.)

**38.** (Ex. D. MSJ at 68.)

**39.** (*Id.*)

**40.** (*Id.*)

**41.** (*Id.*) This policy was modified, revised and adopted again in September 2007, however, none of the provisions discussed above were changed significantly. (Ex. D. MSJ at 80–101.)

**42.** (Ex. D. MSJ at 50–54.)

**43.** (Ex. D. MSJ at 53.)

**44.** (Deposition of Alvin Shaw at 9:22–11:5, attached as Exhibit A to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment, Clerk's Dkt. # 83.)

**45.** (Ex. D. MSJ at 55–59.)

**46.** (Ex. D. MSJ at 59, I.K.)

**47.** 395 F.3d 216 (5th Cir.2004).

**48.** *Id.* at 219.

history as "Coleman cases." [49] If a person has a sex offense in their history, then these are referred to as "non-Coleman cases" [50]

For Coleman cases, the policy provides that:

> Before submission of a request to the parole panel to impose [special condition X] on offenders who have no current or prior conviction for a sex offense, the parole officer or TDCJ Parole Division representative shall provide to the offender written notice and opportunity to provide a written response within 30 days. Upon the expiration of the notice period, the parole officer or TDCJ Parole Division representative shall provide credible information in writing to the panel that indicates that the offender has engaged in unlawful sexual conduct and could constitute a threat to society.[51]

In other words, in Coleman cases where the TBPP would like to impose special condition X, then it is required to provide the offender with written notice that they intend to seek imposition of the condition and the opportunity to provide a written response within thirty days.[52] In non-Coleman cases, where a person has committed a sex offense, the TBPP does not require notice or an opportunity to respond.

## IV. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." [53] A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[54]

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." [55] The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial.[56] The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.[57]

The undersigned will view the summary judgment evidence in the light most favorable to the non-movant.[58] The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.[59] "After the non-movant has been given the opportunity to raise a genuine factual issue, if no

49. (*See* deposition of Shaw, *supra* note 44.)

50. (*Id.*)

51. (Ex. D. MSJ at 59, I.K.)

52. (*Id.*)

53. Fed.R.Civ.P. 56(c).

54. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

55. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

56. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Wise v. E.I. DuPont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995).

57. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992).

58. *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir.1993).

59. *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir.2000).

reasonable juror could find for the non-movant, summary judgment will be granted."[60]

## V. ANALYSIS

Plaintiff complains that he was given no notice or opportunity to respond when the parole board panel mandated, as conditions of his parole, that he enter a sex offender treatment program, refrain from a relationship of any sort with anyone who has a minor child and refrain from using a computer. He is challenging the process by which the conditions were imposed on his parole, not the imposition of the conditions, accordingly, he properly relies on 42 U.S.C. § 1983.[61] Section 1983 provides a private right of action for damages to an individual who suffers a deprivation of rights from a person acting under the color of law.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property."[62] Before these deprivations can occur, a person must be afforded sufficient procedure.[63] This right is known as procedural due process. Procedural due process is "a flexible concept that varies with the particular situation."[64] Nevertheless, "[f]or more than a century" and now nearly a century and a half, "the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'"[65]

The right to procedural due process "depends on a two step-inquiry."[66] First, the Court must determine whether Plaintiff had a liberty interest in not having these conditions imposed on his paroles[67] If so, then the Court must determine whether the state provided constitutionally sufficient procedures before imposing the conditions.[68]

### A. Plaintiff's Liberty Interest

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty' or it may arise from an expectation or interest created by state laws or policies."[69] When an individual has been convicted of committing a crime, his liberty interest "may be circumscribed."[70] Nevertheless, a prisoner does not "shed all constitutional rights at the prison gate" and is guaranteed "some process before the government can impose conditions that are qualitative-

60. *Id.*

61. *See, e.g., Williams v. Ballard,* 466 F.3d 330, 332 (5th Cir.2006) (plaintiff relied on § 1983 to challenge the requirement that he register as a sex offender when the condition was imposed without procedural due process).

62. *Wilkinson v. Austin,* 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005).

63. *Id.* at 225, 125 S.Ct. 2384.

64. *Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). *See also Faulder v. Texas Bd. of Pardons & Paroles,* 178 F.3d 343, 345 (5th Cir.1999) (per curiam) ("Procedural due process is an inherently flexible concept.")

65. *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (quoting *Baldwin v. Hale,* 68 U.S. 223, 233, 1 Wall. 223, 17 L.Ed. 531 (1863)).

66. *Wilkinson,* 545 U.S. at 221, 224, 125 S.Ct. 2384; *Coleman v. Dretke,* 395 F.3d 216, 221 (5th Cir.2004) (*"Coleman I "*).

67. *Coleman I,* 395 F.3d at 221 (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)).

68. *Id.*

69. *Wilkinson,* 545 U.S. at 221, 125 S.Ct. 2384 (internal citations omitted).

70. *Coleman I,* 395 F.3d at 221.

ly different from the punishment characteristically suffered by a person convicted of the crime and which have stigmatizing consequences." [71] This same requirement of process is guaranteed when conditions of release are placed on a person's parole. [72] When a condition of release constitutes a "dramatic departure from the basic conditions" of release, the state "must provide some procedural protections prior to its imposition." [73]

In *Coleman I*, a state prisoner, who had been indicted for aggravated sexual assault of a child and indecency with a child by contact but had been convicted of only misdemeanor assault, challenged the revocation of his parole for his failure to enroll or participate in therapy. [74] He asserted that the state violated his right to due process by imposing, without advance notice or a hearing, sex offender registration and therapy as conditions of his release. [75] The Fifth Circuit held that imposing sex offender classification and conditions on a person who has not been convicted of a sex offense, without a hearing and notice, is unconstitutional. [76] A person who has not been convicted of a sex offense has a liberty interest in not having sex offender classification and conditions imposed on his parole. [77] In making this determination, the Fifth Circuit stated that "[a]bsent a conviction of a sex offense" the state had to afford Coleman a hearing before imposing sex offender classification and conditions. [78]

Defendants argue that this statement—"[a]bsent a conviction of a sex offense"—made outside of the analytical section of the Fifth Circuit's opinion, means the converse of the Fifth Circuit's holding is true. [79] By deciding that a person who has not been convicted a sex offense has a liberty interest regarding the imposition of sex offender conditions on his parole, Defendants insist that the Fifth Circuit ruled that any person who has ever been convicted of a sex offense has no liberty interest regarding sex offender conditions imposed on his parole. [80] Further, Defendants insist this is so even when the sex offense was committed when a parolee was a minor, the sex offense was committed thirty years ago, and the person is currently on parole for a subsequent crime that was not a sex offense. [81]

In the view of Defendants, *Coleman I* created a bright-line rule: those who have not been convicted of a sex offense (so-called Coleman cases) [82] have a liberty interest and are entitled to process before special condition X may be imposed and those who have been convicted of a sex offense (non-Coleman cases) [83] have no liberty interest and are entitled to no process

71. *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 477–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) and *Vitek v. Jones*, 445 U.S. 480, 493–94, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980)) (internal quotations omitted).

72. *Id.* at 222 (citing *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).

73. *Id.*

74. *Id.* at 221.

75. *Id.* at 221.

76. *Id.* at 222.

77. *Id.*

78. *Id.* at 225.

79. *See* Defendants' Response to Plaintiff's Motion for Summary Judgement with Brief in Support, Clerk's Dkt. # 108 at 16 ("D.Resp.")

80. (*Id.*)

81. (*Id.*)

82. (*See* deposition of Shaw, supra note 44.)

83. (*Id.*)

at all. Defendants have implemented and enforced a policy based on this interpretation.[84] The Court does not read *Coleman I* as expansively as Defendants.

Defendants rely on a subsequent district court opinion, *Uresti*,[85] that interpreted *Coleman I*. In a single paragraph, Uresti held that a person convicted of a sex offense had failed to allege sufficient facts to support a due process violation regarding the imposition of sex offender conditions on his parole.[86] Uresti, a decision not binding on this Court, is distinguishable in several respects. First, Uresti was challenging the conditions themselves in a habeas petition, not the process used to impose the conditions under § 1983.[87] Second, although his age is not clear from the opinion, it does not appear that Uresti was a minor when he committed the sex offense. Third, the court in *Uresti* spent the majority of its detailed and thoughtful opinion discussing Uresti's placement in super intensive supervision program and only gave cursory attention to Plaintiff's due process claim.[88] The Court finds *Uresti* unpersuasive.

Defendants also rely on the Supreme Court's decision in *Connecticut Dep't of Pub. Safety v. Doe.*[89] At issue in Doe was a Connecticut statute that posted the name, address, photo and description of any convicted sex offender in the state on the internet in a public, searchable database.[90]

Doe held that inclusion in the database did not infringe on the offenders' liberty interest.[91] Doe focused on the requirement that the inclusion in the database was "based on the fact of previous conviction, not the fact of current dangerousness." [92]

As this Court explained in its earlier opinion, *Doe* is inapplicable to this case for several reasons. First, in *Doe*, inclusion in the database was mandated by the Connecticut legislature.[93] In contrast, the Texas legislature here has simply permitted the TBPP to impose conditions on parole; the Texas legislature does not set the conditions of the parole. Second, in *Doe*, the database was created to inform the public, the focus was external.[94] Here, the focus is on treating the offender, it is internal. Third, in *Doe*, inclusion in the database was based solely on criminal record.[95] No individualized assessment was required.[96] In contrast, the sex offender conditions here are supposed to be tailored to the unique needs of each individual offender. As the policy itself explains:

> Sex offenders have **distinctive supervision and treatment needs.** Individual sex offenders have their own **unique issues** that officers are required to address on a **case-by-case basis.** Officers shall manage sex offenders within a comprehensive framework when determining the type of special conditions

84. (Ex. D. MSJ at 59, 1.K.)

85. *Uresti v. Collier,* No. H–04–3094, 2005 WL 1515386, 2005 U.S. Dist. LEXIS 34292 (S.D.Tex. June 23, 2005).

86. *Id.* at 2005 WL 1515386, *13, 2005 U.S. Dist. LEXIS 34292, *39.

87. *See Uresti* at 2005 WL 1515386, *2, n. 3, 2005 U.S. Dist. LEXIS 34292, *5, n. 3.

88. *Id.* at 2005 WL 1515386, *4–8, 2005 U.S. Dist. LEXIS 34292, *13–25.

89. 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).

90. *Id.* at 5, 123 S.Ct. 1160.

91. *Id.* at 7, 123 S.Ct. 1160.

92. *Id.* at 4, 123 S.Ct. 1160.

93. *Id.* at 7, 123 S.Ct. 1160.

94. *Id.* at 5, 123 S.Ct. 1160.

95. *Id.* at 7, 123 S.Ct. 1160.

96. *Id.*

that are needed to assist the offender in become a productive member of the community while enhancing public safety. Offenders require their own **customized course of action** with respect to treatment referrals and supervision techniques.[97]

The Fifth Circuit distinguished *Doe* in deciding *Coleman I*.[98] Instead, the Fifth Circuit relied on *Vitek v. Jones*.[99] At issue in *Vitek* was whether a Nebraska statute allowing the Director of Correctional Services to transfer a prisoner to a mental hospital if a designated physician or psychologist finds the prisoner to be suffering from a mental disease or defect was unconstitutional on procedural due process grounds.[100] *Vitek* held that a conviction for a crime did not permit the state to subject the a prisoner to involuntary institutionalization in a mental hospital without any process.[101] These "consequences visited on the prisoner are qualitatively different from the punishment characteristically suffered by a person convicted of crime."[102] Based on the combination of stigma and compelled behavior modification treatment, *Vitek* held that the inmate had been deprived of a protected liberty interest, and thus the state was required to provide procedural protections.[103]

In denying Defendants' Motion for Summary Judgment, this Court already held that Plaintiff has a liberty interest regarding the imposition of the complained of conditions on his parole, stating:

[T]he imposition of sex conditions based on a single, twenty-seven (27) year old conviction for a sex offense committed when the offender was fifteen (15) years old, which was discharged twenty (20) years ago, where the holding conviction is for an unrelated offense, necessarily implicates a liberty interest protected by the Fourteenth Amendment.[104]

Despite the earlier ruling, Defendants continue to insist that Plaintiff does not have a liberty interest.[105] The Court will now more fully explain its reasoning which led to its conclusion.

The question before the Court is whether the conditions placed on Plaintiff's parole represent a "dramatic departure" from Plaintiff's sentence for his conviction of Debit Card Abuse (Habitual).[106] Plaintiff complains of the imposition of three conditions on his parole: (1) he was required to enroll sex offender treatment program; (2) he was prohibited from having any relationship with anyone who has a minor child; and (3) he was prohibited from using a computer. As explained below, each of these three conditions severely infringe on Plaintiff's liberty and represent a dramatic departure from his sentence, particularly when the Court considers that Plaintiff's situation is complicated by three unique characteristics: (1) Plaintiff was a minor at the time he committed a sex offense; (2) Plaintiff committed the sex offense thirty years ago; (3) the condition was imposed on Plaintiff when he was on parole for an offense that was not a sex offense.

97. (Ex. D. MSJ at 65, emphasis added.)

98. *Coleman I*, 395 F.3d at 223, n. 30 ("we do not believe *Doe* provides much guidance")

99. *445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980).*

100. *Id.* at 487–88, 100 S.Ct. 1254.

101. *Id.* at 494, 100 S.Ct. 1254.

102. *Id.* at 493, 100 S.Ct. 1254.

103. *Id.* at 494, 100 S.Ct. 1254.

104. (Memorandum Opinion and Order at 7, Clerk's Dkt. # 100.)

105. (*See* Def. Resp. at 14–15.)

106. *Coleman I*, 395 F.3d at 221.

### 1. Conditions on Parole

### a. Sex Offender Treatment Program

 As a condition of his parole, Plaintiff is required to participate in a sex offender treatment program. Plaintiff has attended over 300 treatment and counseling sessions.[107] Plaintiff has undergone testing through a penile plethysmograph.[108] Plaintiff's treating doctor described the penile plethysmograph as follows:

> Currently the two most common procedures for observing penile responsiveness are the measure of penile circumference through the use of the mercury in rubber gauge (Fisher, Gross, & Zuch, 1965) and the measure of penile volume through the use of the volumetric plethysmograph (Freund, 1963). Studies indicate that significant changes in penile circumference or volume during the presentation of sexual stimuli may be suggestive of individual patterns of sexual arousal.[109]

The Fifth Circuit discussed Texas' sex offender treatment program in *Coleman I* and held that "due to its highly invasive nature, Texas's sex offender therapy program is 'qualitatively different' from other conditions which may attend an inmate's release."[110] The treatment is "confrontational" and "confidentiality is not maintained."[111] It involves "interventions with

psychopharmacological agents, polygraph exams to determine sexual history, and the use of penile plethysmographs to modify deviant sexual arousal and enhance appropriate sexual arousal."[112] The Ninth Circuit, relying on *Coleman I*, overturned a district court imposition of penile plethysmographs as a condition of an offender's supervised release.[113] The Ninth Circuit described penile plethysmographs in more detail than Defendants:

> Prior to beginning the test, the subject is typically given instructions about what the procedure entails. He is then asked to place the device on his penis and is instructed to become fully aroused, either via self-stimulation or by the presentation of so-called "warm-up stimuli," in order to derive a baseline against which to compare later erectile measurements. After the individual returns to a state of detumescence, he is presented with various erotic and non-erotic stimuli. He is instructed to let himself become aroused in response to any of the materials that he finds sexually exciting. These stimuli come in one of three modalities—slides, film/videoclips, and auditory vignettes—though in some cases different types of stimuli are presented simultaneously. The materials depict individuals of different ages and genders—in some cases even possessing different anatomical features—and portray sexual scenarios involving varying degrees of coercion. The stimuli may be

---

107. (Ex. D. Resp. at 85.)

108. (Ex. D. Resp. at 87.)

109. (*Id.*)

110. *Coleman I*, 395 F.3d at 223 (quoting *Morrissey*, 408 U.S. at 478, 92 S.Ct. 2593). The Fifth Circuit noted that it was "unclear exactly what procedures Coleman would be subjected to during his course of treatment." *Id.* at 223, n. 28. Here, there is no uncertainty or lack of clarity regarding Plaintiff's treatment.

111. *Coleman I*, 395 F.3d at 224 (quoting the website of Texas' Council on Sex Offender Treatment). The Court notes that this website is no longer publically available.

112. *Id* (internal quotations omitted).

113. *United States v. Weber*, 451 F.3d 552, 564 (9th Cir.2006).

presented for periods of varying length—from mere seconds to four minutes or longer.

Changes in penile dimension are recorded after the presentation of each stimulus .... [114]

Without doubt, the testing is physically intrusive. Further, the test is also mentally intrusive, because it requires extended analysis and "probing of [an offender's] innermost thoughts." [115]

All of this underscores the severity of the condition placed on Plaintiff's parole. The Court is persuaded that this severe and intrusive condition on Plaintiff's parole constitutes a "dramatic departure" from his sentence for debit card abuse. While his sentence was enhanced by his previous sex offense, Plaintiff committed his sex offense as a minor, almost thirty years ago, and is currently on parole for an unrelated offense. As the Court explains below, these three factors support the Court's conclusion that sex offender treatment constitutes a dramatic departure from the typical consequences of Plaintiff's conviction.

### i. Minor at the Time of the Sex Offense

It is undisputed that at the time he committed a sex offense, Plaintiff was a minor, fifteen years old.

Twenty years ago, a plurality of the United States Supreme Court discussed the legal culpability of a fifteen-year old, who had been sentenced to death because he assisted in committing a heinous murder.[116] Invalidating the death penalty for those fifteen and under, the Court in *Thompson* reasoned that "less culpability should attach to a crime committed by a juvenile than to a comparable crime committed by an adult." [117] A teenager is less culpable than an adult because:

> Inexperience, less education, and less intelligence make the teenager less able to evaluate the consequences of his or her conduct while at the same time he or she is much more apt to be motivated by mere emotion or peer pressure than is an adult. The reasons why juveniles are not trusted with the privileges and responsibilities of an adult also explain why their irresponsible conduct is not as morally reprehensible as that of an adult.[118]

Seventeen years later, a majority of the Supreme Court expanded that holding and invalidated the death penalty for those eighteen and under at the time of the crime in *Roper v. Simmons*.[119] The Court in *Roper* explained three reasons that a person under eighteen is not as culpable as an adult.

---

114. *Weber*, 451 F.3d at 562 (quoting Jason R. Odeshoo, Of Penology and Perversity: The Use of Penile Plethysmography on Convicted Child Sex Offenders, 14 TEMP. POL. & CIV. RTS. L. REV. 1, 2 (2004)). The Ninth Circuit also noted the accuracy and reliability of penile plethysmograph are in doubt for various reasons. "A predominant concern with plethysmograph testing it its susceptibility to manipulation or faking." *Weber*, 451 F.3d at 564. "Plethysmograph testing has also been sharply criticized as lacking uniform administration and scoring guidelines." *Id.* (internal quotations omitted). Further, "[c]ourts have uniformly declared that the results of such tests are inadmissible as evidence because

there are no accepted standards for this test in the scientific community." *Id.* at 565 n. 15 (internal quotations omitted) (listing cases and studies).

115. *Id.* at 562–63.

116. *Thompson v. Oklahoma*, 487 U.S. 815, 819, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988).

117. *Id.* at 835, 108 S.Ct. 2687.

118. *Id.*

119. 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).

First, juveniles lack the maturity of adults and are not able to consider the impact of their decisions.[120] "[A]s any parent knows and as the scientific and sociological studies" confirm "a lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions." [121]

Second, juveniles are less in control of their environment and are "more vulnerable or susceptible to negative influences and outside influences." [122] "[Y]outh is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage." [123]

Third, the "character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed." [124] "The reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character." [125]

While the cases discussed above address the death penalty for juveniles, the reasoning applies with equal force to juveniles who are convicted of sex crimes. "[T]his society has long recognized the special status of juveniles." [126] Plaintiff's status as a minor at the time he committed the sex offense supports the Court's finding that the conditions imposed on Plaintiff constitute a dramatic departure from his sentence.

### ii. Plaintiff Committed the Sex Offense Thirty Years Ago

It is also undisputed that the only sex offense that Plaintiff has ever been convicted of took place thirty years ago, in 1978.

Federal law embraces the proposition that eventually a conviction is so old that it is no longer appropriate to consider in certain situations. For example, the federal sentencing guidelines require lengthening a sentence if the person has past criminal convictions.[127] However, if the previous convictions occurred fifteen or more years before the current conviction, then the guidelines prohibit a judge from considering the previous offenses when determining the sentence for the current conviction.[128]

Similarly, the Federal Rules of Evidence prohibit the introduction of crimes ten or more years old to attack a witness's character for truthfulness.[129] The Texas Rules of Evidence contain a similar provision.[130] As the Federal 1972 Proposed Rules note, "practical considerations of fairness and relevancy demand that some boundary be recognized." [131]

**120.** 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).

**121.** *Id.* (internal quotations and citations omitted).

**122.** *Id.*

**123.** *Id.* (quoting *Eddings v. Oklahoma,* 455 U.S. 104, 115, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)).

**124.** *Id.* at 570, 125 S.Ct. 1183.

**125.** *Id.*

**126.** *Wilson v. State,* No. 05-94-00748-CR, 1996 WL 499876 at *11 (Tex.App.—Dallas Aug. 27, 1996, no writ) (not designated for publication).

**127.** United States Sentencing Commission, *Guidelines Manual,* § 4A1.1 (Nov.2008).

**128.** *Id.* at § 4A1.2(e)(3).

**129.** FRE 609(b).

**130.** Tex.R. Evid. 609(b).

**131.** 1972 Proposed Rules, Note to Subdivision (b) of Federal Rule of Evidence 609.

This Court agrees that some boundary must be recognized. Extraordinarily old convictions, by their nature, are less relevant to the determinations made by the TBPP—how to best rehabilitate the offender and protect the community—than those that occurred more recently. Plaintiff has a greater liberty interest regarding the imposition of sex offender conditions when the sex offense took place thirty years ago, than if the sex offense had occurred more recently. The fact that Plaintiff's sex offense occurred thirty years ago underscores the Court's determination that the imposition of these conditions on his parole constitute a dramatic departure from his sentence.

### iii. Special Condition X Imposed on Plaintiff for an Unrelated Offense

It is undisputed that Plaintiff completed his sentence for his sex offense. Special condition X was imposed on Plaintiff's parole for a conviction of Debit Card Abuse (Habitual) that was merely enhanced by his previous sex offense. There is no connection between the crime committed by Plaintiff—debit care abuse—and the conditions imposed on his parole for that crime—sex offender treatment. This lack of connection supports the Court's determination that the imposition of special condition X on his parole constitute a dramatic departure from his sentence.

### b. Prohibition on Relationship

■ As a condition of his parole, Plaintiff is prohibited from having any relationship, platonic or romantic, with any person who has a minor child, without prior written authorization from his parole officer.

The First Amendment of the United States Constitution protects the right of individuals to "enter into intimate relationships, including the union of marriage, and to maintain other close familial relationships." [132] "The right of private association protects the choice of individuals and organizations 'to enter into and maintain certain intimate and human relationships . . . against undue intrusion by the [s]tate.' " [133] This protection is not limited to family relationships, but applies to "deep attachments" that are "distinctively personal." [134]

Moreover, the Fourteenth Amendment protects the right to personal activities that are deeply rooted in our history and fundamental to our concept of liberty. [135] One of those protected personal decisions is the freedom to marry. [136] This right also includes the ability to make decisions regarding personal, consensual sexual relationships. [137]

By prohibiting Plaintiff from forming any relationship, platonic or romantic, with any person who has a minor child, without prior, written authorization from his parole officer, Defendants impose a severe re-

**132.** *Swanson v. City of Bruce,* 105 Fed.Appx. 540, 542 (5th Cir.2004).

**133.** *Louisiana Debating & Literary Ass'n v. City of New Orleans,* 42 F.3d 1483, 1493 (5th Cir.1995) (quoting *Roberts v. United States Jaycees,* 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)).

**134.** *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1051–52 (5th Cir.1996).

**135.** *Washington v. Glucksberg,* 521 U.S. 702, 727, 117 S.Ct. 2302, 138 L.Ed.2d 772 (1997).

**136.** *See id.* at 727, n. 19, 117 S.Ct. 2302 (citing *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) ("The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness.") and *Turner v. Safley,* 482 U.S. 78, 95–96, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (A "constitutionally protected marital relationship" exists even "in the prison context")).

**137.** *Lawrence v. Texas,* 539 U.S. 558, 567, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003).

striction on a fundamental interest guaranteed by the United States Constitution. This constitutes a dramatic departure from his conviction of debit card abuse for the same three reasons discussed above. The Court emphasizes that Plaintiff is not challenging the condition itself, but rather, the process Defendants used to deprive him of this liberty.

### c. Prohibition on Computer Use

■ As a condition of his parole, Plaintiff is prohibited from using or owning a computer without prior written authorization from his parole officer.

Courts have held that prohibiting internet use, which generally occurs from a computer,[138] is "the early 21st century equivalent of forbidding all telephone calls, or all newspapers."[139] Plaintiff faces not just a restriction on his internet use, but also a ban from using a computer for any purpose. If Plaintiff wished to type a letter or edit his resume on a computer, he would need written authorization from his parole officer.

Given that Plaintiff has never used a computer to commit a crime, this condition is a dramatic departure from his sentence.[140] This sweeping and drastic restriction on personal liberty stands in stark contrast to decisions of courts permitting internet use for people convicted of keeping child pornography on their computer.[141]

The Court finds that prohibiting Plaintiff from owning or using a computer without prior, written authorization is a dramatic departure from Plaintiff's sentence. Again, the Court emphasizes that Plaintiff is not challenging the condition itself, but rather, the process Defendants used to deprive him of this liberty.

### 3. Conclusion—Liberty Interest Exists

In accordance with the analysis above, and the prior decision in this case, the Court concludes that Plaintiff has a constitutionally protected liberty interest regarding the imposition of these conditions on his parole.

### B. Sufficiency of Process

■ Upon finding that Plaintiff had a liberty interest regarding the imposition of certain sex offender conditions on his parole, the Court must then determine whether he was afforded sufficient process before the conditions were imposed.[142]

Plaintiff was afforded no process before the parole panel imposed special condition X on his parole. The Court's review of TBPP policies and procedures reveals that no process is required before imposition of special condition X on offenders such as Plaintiff. A former TBPP official testified that non-Coleman cases, like Plaintiff, would not be entitled to any process before special condition X was imposed.

---

**138.** The Court notes that an increasing number of phones offer internet connectivity. Therefore, if by restricting Plaintiff's access to a computer, the state was attempting to limit his access to the internet, it may not be successful.

**139.** *United States v. Holm,* 326 F.3d 872, 879 (7th Cir.2003).

**140.** Cf. *United States v. Paul,* 274 F.3d 155, 168 (5th Cir.2001) (upholding imposition of

computer and internet ban when person on release relied on a computer to commit crimes) and *United States v. Buchanan,* 485 F.3d 274, 287–88 (5th Cir.2007) (same).

**141.** *Holm,* 326 F.3d at 879; *United States v. Freeman,* 316 F.3d 386, 391–92 (3d. Cir. 2003); *United States v. Sofsky,* 287 F.3d 122, 126–27 (2d Cir.2002).

**142.** *Wilkinson,* 545 U.S. at 224, 125 S.Ct. 2384.

Defendants admit that, "Plaintiff's parole was amended to include special condition X."[143] Further, when Defendants moved for summary judgment, they moved on the basis that Plaintiff did not have a liberty interest, not that they provided him with any process.[144]

Defendants, in their response to this motion, now attempt to claim that they provided Plaintiff with some process before imposing special condition X. In 1989, when Plaintiff pled guilty to debit card abuse enhanced with his prior sex offense, he was notified that he would be placed upon "Specialized Sex Offender Caseload."[145] Also, Plaintiff had a parole revocation hearing in 1998.[146] Defendants claim that these two incidents constituted sufficient process to permit them to impose sex offender conditions on his parole in 2005.[147]

The Court disagrees. Neither of these instances would give Plaintiff notice that special condition X may be placed on his parole. Special condition X would not be developed until 2003, fourteen years after Plaintiff's guilty plea and five years after his parole revocation hearing. Simply classifying someone as a sex offender does not provide the person with any notice that their parole conditions would be radically changed at any later date. Certainly, Defendants cannot argue that Plaintiff was afforded the opportunity to challenge the imposition of special condition X at these proceedings, years before special condition X was even developed.

Defendants also claim that they provided Plaintiff with sufficient process through his 2004–2005 review for parole.[148] During his parole review, Plaintiff was interviewed by an institutional parole officer.[149] However, there is no indication that this officer notified Plaintiff that special condition X may be imposed on him at the time of his parole. Nor is there any indication that Plaintiff was allowed to review the documents that formed the basis of the institutional parole officer's report or was given the opportunity to challenge the report or explain why he did not feel special condition X was appropriate. Indeed, there is not a single mention of special condition X in the officer's report. Accordingly, the Court determines this was not sufficient process.

## C. Grant Summary Judgment

Plaintiff has proven that he had a liberty interest and that he was not afforded sufficient process. There are no disputed questions of material fact. Accordingly, Plaintiff is entitled to summary judgment on his claim of a violation of due process and Plaintiff's motion for summary judgement is granted.

## D. Declaratory Relief

Plaintiff requests that the Court declare that the Defendants' Parole Division Policy and Operation Procedure (PD/POP) 3.6.2 unconstitutional in its application against him. In light of the Court's analysis above, the Court declares, pursuant to its authority under 28 U.S.C. § 2201, that PD/POP 3.6.2 was unconstitutional as applied to Plaintiff. The Court has not considered, and the Plaintiff has not requested that the Court consider, the question of whether the policy is facially unconstitutional. To the limited extent provided

143. (D. Resp. at 8.)

144. (*See* D. MSJ at 8–13.)

145. (Ex. D. Resp. at 29.)

146. (D. Resp. at 28.)

147. (D. Resp. at 28.)

148. (D. Resp. at 28–29.)

149. (Ex. D. Resp. at 32–39.)

above, Plaintiff's motion for summary judgment is granted.

## E. Injunctive Relief

In light of the Court's analysis above, the conditions complained of by Plaintiff were placed on his parole unconstitutionally. Accordingly, the Court orders their removal.

Plaintiff also requests extensive injunctive relief including an order from the Court detailing the exact process that must be used should the state wish to impose any conditions.[150] The Court declines to grant such broad relief.

Instead, the Court defers to Defendants to enact sufficient process for Plaintiff, should they choose to request the complained of conditions again. Defendants have not attempted to craft proper procedure because Defendants have operated under the assumption that Plaintiff has no liberty interest that would mandate any procedure. Given this decision, Defendants are now aware that if they wish to impose these three complained of conditions on Plaintiff's parole, they must afford him sufficient procedure. The determination of what constitutes the proper procedure is a flexible, fact-specific determination, without rigid rules.[151] Defendants represent the administrative agency that sets parole conditions, therefore, they are in the best position to craft a procedure to protect Plaintiff's liberty interests.

Nevertheless, the Court offers Defendants a few recommendations. Any procedure must balance the three factor framework set out by *Mathews v. Eldridge*.[152] Defendants must consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[153]

As explained above, the conditions complained of by Plaintiff infringe on areas of his life where he has a significant private interest. Any procedures developed must ensure that these interests are protected.[154] Second, Defendants must craft a procedure that alleviates the risk of erroneous deprivation.[155] Finally, the procedure must recognize the government's interest.[156] While "sex offenders are a serious threat to the nation," [157] there are procedures that Defendants can develop to defend against this threat. Contrary to the dramatic and oppressive burden described in the affidavits attached to Defendants' response,[158] the Court anticipates that any administrative burden is likely to be minimal since it will apply only to Plaintiff.

---

**150.** (*See* Proposed Order, attached to Pl. Mtn. for SJ.)

**151.** *Id.* (citing *Morrissey*, 408 U.S. at 481, 92 S.Ct. 2593 and *Mathews*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18.)

**152.** 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See also, Wilkinson*, 545 U.S. at 224–230, 125 S.Ct. 2384 (applying the three factor *Mathews* framework).

**153.** *Mathews*, 424 U.S. at 335, 96 S.Ct. 893.

**154.** *Id.; Wilkinson*, 545 U.S. at 225, 125 S.Ct. 2384.

**155.** *Id.*

**156.** *Mathews*, 424 U.S. at 335, 96 S.Ct. 893; *Wilkinson*, 545 U.S. at 227, 125 S.Ct. 2384.

**157.** *Doe*, 538 U.S. at 4, 123 S.Ct. 1160.

**158.** (*See* D. Resp. at 31–39.)

In developing a process, the Court encourages Defendants to consider the following aspects of what constitutes proper procedure. First, notification prior to any deprivation is the central requirement of procedural due process.[159] Second, an opportunity to respond is an "important procedural mechanism[ ] for purposes of avoiding erroneous deprivations."[160] Third, describing the reasoning that supports an action helps prevent singling out an individual "for insufficient reason."[161] The Court offers these merely as examples of what courts consider important procedural considerations.

If Defendants impose the conditions on Plaintiff again, Plaintiff has the opportunity to challenge the procedure used to impose those conditions. However, that question is not before the Court today and it would be improper for the Court to act on it. To speculate on the constitutionality of what process the state might use if it happens to request these conditions again goes far beyond this Court's power to decide the actual controversy presented to it.[162]

To the extent discussed above, Plaintiff's motion for summary judgment is granted in part and denied in part.

## VI. OBJECTIONS DISMISSED

Defendants raise evidentiary objections to two studies cited by Plaintiff.[163] The Court does not rely on either of these pieces of evidence to reach its conclusions. Accordingly, the Court dismisses the objections as moot.

## VII. CONCLUSION

In accordance with the discussion above, Plaintiff's Motion for Summary Judgment, Clerk's Dkt. # 105, is **GRANTED IN PART** and **DENIED IN PART.**

Evidentiary objections raised by Defendants in Defendants' Response to Plaintiff's Motion for Summary Judgment (Clerk's Dkt. # 108) are **DISMISSED.**

The Court **FURTHER ORDERS** the following conditions **REMOVED** from Plaintiff's parole:

> Enroll in and participate in a treatment program for sex offenders as directed by the supervising Parole Officer. Offenders serving a sentence for an offense as defined in 508.187(a), against a victim who is under 17, shall receive psychological counseling until such time as the treatment provider, in conjunction with the Parole Division, determines that it is no longer required. The Parole Division will submit a recommendation to withdraw the requirement to attend psychological counseling to the appropriate Board panel in those instances where such action is deemed appropriate.[164]

**159.** *Wilkinson,* 545 U.S. at 226, 125 S.Ct. 2384 (quoting *Fuentes,* 407 U.S. at 80, 92 S.Ct. 1983 and *Baldwin,* 1 Wall. 223, 68 U.S. 223, 17 L.Ed. 531.) *See also, Ex parte Campbell,* 267 S.W.3d 916 (Tex.Crim.App.2008), http://www.cca.courts.state.tx.us/opinions/HTMLopinionInfo.asp?OpinionID=17511, text following n. 61 (due process requires notice).

**160.** *Wilkinson,* 545 U.S. at 226, 125 S.Ct. 2384. *See also, Ex parte Campbell, supra* note 162, text following n. 61 (due process requires opportunity to respond and submit information).

**161.** *See Wilkinson,* 545 U.S. at 226, 125 S.Ct. 2384 (requiring officials to explain why they request a review and allowing inmate to respond "safeguards against the inmate's being mistaken for another or singled out for insufficient reason.")

**162.** *See, e.g., Miss. State Democratic Party v. Barbour,* 529 F.3d 538 (5th Cir.2008) (district court erred when it acted on a case that was "too remote and abstract an inquiry for the proper exercise of the judicial function," instead, should wait for a justiciable case or controversy)

**163.** (D. MSJ at 11–12.)

**164.** (Ex. D. MSJ at 38.)

* * *

I shall not become involved in a dating, marriage or platonic relationship with any person who has children 17 years of age or younger unless approved in writing by my supervising Parole Officer.[165]

* * *

I shall not own, maintain or operate computer equipment without a declared purpose and the written authorization of my supervising Parole Officer. If authorization is granted, I shall submit to a search of the computer hardware, software, files, and peripherals by any TDCJ parole or law enforcement official. I shall allow the supervising officer to install a specified computer program designed to track computer activity.[166]

An Order entering Final Judgment will follow.

### FINAL JUDGMENT

The Magistrate Court issues this Final Judgment pursuant to 28 U.S.C. § 636(c). The parties consented to this Court's jurisdiction, and the case was assigned to this Court's docket for all purposes on February 20, 2008 (Clerk's Dkt. # 47). The Court considered Plaintiff's Motion for Summary Judgment and, earlier today, signed an Order granting the motion in part as to all of Plaintiff's claims and denying in part as to a portion of the injunctive relief requested by Plaintiff. (Order, Clerk's # 114). Accordingly, the Court

enters the following final judgment pursuant to Federal Rule of Civil Procedure 58.

**IT IS ORDERED** that **FINAL JUDGMENT** is entered in favor of Plaintiff David Brian Jennings against the following defendants, each in their official capacities: Defendant Rissie Owens, Presiding Officer, Texas Board of Pardons and Paroles; Brian Collier, Deputy Executive Director, Texas Department of Criminal Justice—Parole Division ("TDCJ-PD"); Jay Patzke, Deputy Director, TDCJ-PD; Linda McCarver, Parole Supervisor, TDCJ-PD; and Teresa Perez, Parole Officer, TDCJ-PD.

**IT IS FURTHER ORDERED** that Plaintiff is granted declaratory and injunctive relief to the limited extent set forth in the Court's Order on Plaintiff's Motion for Summary Judgment (Clerk's Dkt. # 114).

**IT IS FURTHER ORDERED** that all relief not expressly granted is **DENIED** and pending motions, if any, are **DISMISSED.**

**IT IS FINALLY ORDERED** that the case is hereby **CLOSED.**

---

**165.** (Ex. D. MSJ at 40.)

**166.** (*Id.*)